IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FUJITSU LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 4530 |
| | ) | *and* |
| TELLABS, INC., | ) | No. 12 C 3229 |
| TELLABS OPERATIONS, INC., and | ) | |
| TELLABS NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

In three related lawsuits, Case Nos. 08 C 3379,[1] 09 C 4530, and 12 C 3229 before this court, plaintiff Fujitsu Limited alleged that defendants Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc. (collectively "Tellabs") infringed six patents owned by Fujitsu Limited.[2]

At this point in the litigation, two of the original patents-in-suit have been voluntarily dismissed (the '772 Patent (Tellabs) and the '686 Patent (Fujitsu)); two additional patents-in-suit have been deemed invalid on summary judgment (the '006 Patent (Fujitsu) and the '418 Patent (Fujitsu)); and a fifth patent-in-suit was found to be valid, but not infringed, after a nine-day jury trial (the '681 Patent (Fujitsu)). In the two cases that remain pending before this court, 09 C 4530 and 12 C 3229, three Fujitsu patents—the '163 Patent, the '737 Patent, and the '681 Patent

---

[1] Case number 08 C 3379 has now been completed and closed.

[2] Fujitsu Limited is technically a defendant/counter-claimant in case number 09 C 4530. For ease of use, and because the claims involving Tellabs' patent-at-issue have been resolved, the court refers to Fujitsu Limited only as "plaintiff" and to the three Tellabs entities as "defendants" in the case caption and in the body of the opinion.

1

(newly-accused products only)—remain at issue.[3] Both sides of the litigation have also filed appeals of earlier court rulings in the United States Court of Appeals for the Federal Circuit.

The parties have scheduled a mediation of their ongoing dispute with mediator Allan Sternstein of the Dykema law firm to take place on Sunday, April 14, 2013. Tellabs would like to disclose certain information to its in-house counsel and to its client's "top management" in advance of that mediation, and has filed Tellabs' "Motion for Reclassification and Use of Documents Produced Under the Protective Order" (09 C 4530, Dkt. No. 1069 ("Tellabs' Mot.")) for that purpose.

For the reasons stated below, Tellabs' motion is granted and the court holds that the following "Contested Information" should no longer be considered protected or confidential under the terms of the parties' stipulated amended protective orders or any previous court order in these related cases:

- that Fujitsu Limited has analyzed U.S. Patent Nos. 6,285,480 and 7,103,063;

- that Fujitsu Limited determined that U.S. Patent No. 6,285,480 related to its WDM products such as the FLASHWAVE 7500; and

- that Fujitsu Limited determined that U.S. Patent No. 7,103,063 related to products practicing RPR such as the FLASHWAVE 4500.

## BACKGROUND

The Contested Information is related to Fujitsu Limited's 2006 inspection of a Tellabs optical scanner and Tellabs' associated product manuals, including three optical amplifier modules. The results of Fujitsu Limited's 2006 inspection are set forth in a series of reports that were issued in draft and final form to various Fujitsu Limited executives in January 2007 under the heading "Confidential & Privileged." (See Tellabs' Mot., Exs. A-F (collectively the "2007

---

[3] Fujitsu Limited also alleges infringement of the '418 Patent (Fujitsu) in case number 12 C 3229, but this court's invalidity ruling on September 26, 2012 precludes relief on this claim. (See 09 C 4530, Dkt. No. 950.)

Reports") (filed under seal).) Also set forth in the 2007 Reports is the Contested Information, which Fujitsu Limited describes as "Fujitsu's highly sensitive analysis of its own products which, legitimately or not, may be targeted by Tellabs." (Dkt. No. 1079 ("Fujitsu's Resp.") at 13.) Although Tellabs' initial motion sought to reclassify the 2007 Reports in their entirety, in its reply brief Tellabs seeks only to disclose the Contested Information to Tellabs' inside counsel and senior management. Because the history of Fujitsu Limited's production of the 2007 Reports in this litigation is relevant to Tellabs' pending motion, it is recounted below in detail.

On June 28, 2011, Fujitsu Limited first filed a "Motion for Protective Order Relieving It from Responding to Discovery Related to Inspection of Tellabs Equipment." (09 C 4530, Dkt. No. 330.) Magistrate Judge Jeffrey Cole denied Fujitsu Limited's motion on May 1, 2012, ruling that the 2007 Reports were not protected by the work product doctrine and were sufficiently relevant to warrant production by Fujitsu Limited during discovery. (09 C 4530, Dkt. No. 647.) Fujitsu Limited did not file an objection to Magistrate Judge Cole's ruling, but Fujitsu Limited also did not produce the 2007 Reports to Tellabs at that time because it further claimed they were protected by the attorney-client privilege. (*See* 09 C 4530, Dkt. No. 623 (5/10/12 docket entry).)

On June 4, 2012, Tellabs filed a motion to compel production of the 2007 Reports on the grounds that Fujitsu Limited waived its attorney-client privilege argument by raising the privilege, but not fully addressing it, in Fujitsu Limited's earlier briefing to the court. (09 C 4530, Dkt. No. 644 (sealed); Dkt. No. 674 (public).) Among other issues included in the parties' briefing on Tellabs' motion to compel was the question of whether Fujitsu Limited's expert, Dr. Alan Willner, reviewed a document incorporating the results of the 2006 inspection during the preparation of his expert report. On August 29, 2012, after holding an evidentiary hearing, Magistrate Judge Cole determined that Dr. Willner did review this document, and that Fujitsu

3

Limited therefore could not prevail on its claim of attorney-client privilege. (09 C 4530, Dkt. No. 912; *see also* Dkt. No. 897.) Magistrate Judge Cole specifically ordered Fujitsu Limited "to immediately produce the documents that comprise Fujitsu's 2006 inspection of the Tellabs modules" and ruled that Tellabs' motion to compel was moot. (09 C 4530, Dkt. No. 912 at 27.) Fujitsu Limited objected to Magistrate Judge Cole's ruling, and this court overruled Fujitsu Limited's objections on September 27, 2012, ordering Fujitsu Limited "to turn over all relevant discovery materials to Tellabs on or before 10/18/12 at noon." (09 C 4530, Dkt. No. 952.)

At a hearing before Magistrate Judge Cole on October 19, 2012, counsel for Tellabs noted that, while the 2007 Reports had been turned over to Tellabs, "a lot of pages of material is [sic] simply redacted." (Tellabs' Mot, Ex. G (10/19/2012 Hr'g Tr.) at 3:20.) Counsel for Fujitsu Limited argued that the redacted sections of the 2007 Reports "deal with matters that don't have anything to do with the inspection." (*Id.* at 4:11-12.) To get around this impasse, Magistrate Judge Cole ordered non-redacted copies of the 2007 Reports to be "turned over immediately under an attorneys' eyes only protective order" to two of Tellabs' outside counsel—Richard O'Malley, Jr. and James P. Bradley—"not to be shared by anybody, including other members of their team, without further order of the court." (*Id.* at 11:3-6; 11:19-23.) Magistrate Judge Cole noted that this restricted production would allow counsel for Tellabs the opportunity to determine whether Fujitsu Limited's redactions were "legitimate" or if Tellabs was "going to want to pursue" the full disclosure of the 2007 Reports. (*Id.*at 12:1-3; 13:13-15.)

Later that same day, on October 19, 2012, counsel for both parties agreed that production of the 2007 Reports would be made to Tellabs under the designation "for outside counsel only," but without further restricting disclosure only to Messrs. O'Malley and Bradley, and informed the court of this agreement. (Dkt. No. 1083 ("Tellabs' Reply"), O'Malley Decl. ¶ 3.) Counsels'

4

agreement was confirmed via email on November 12, 2012. (O'Malley Decl. ¶ 4, O'Malley Ex. A.) Fujitsu Limited thereafter turned over to Tellabs's outside counsel un-redacted copies of the 2007 Reports with the understanding that they were to be received and reviewed by Tellabs' outside counsel only.[4]

It is undisputed that, at all relevant times, the parties' production of discovery in these related lawsuits has been governed by the terms of various stipulated protective orders.[5] At the time of Magistrate Judge Cole's October 19, 2012 order, the Stipulated Second Amended Protective Order was in place. (08 C 3379, Dkt. No. 95 ("2d Am. Protective Order").) The Stipulated Second Amended Protective Order defines "Confidential Information" as "confidential, proprietary business information and/or trade secrets" that "could injure or damage" the producing party and "could place that party at a competitive disadvantage." (*Id.* at 2, ¶¶ 1-2.) "Confidential Information" is further limited to "material that the Producing Party believes in good faith must be held confidential to protect business or commercial interests." (*Id.* at 3, ¶ 2.) Once produced in discovery, "Confidential Information" can be disclosed to the receiving party's outside counsel as well as to four designated in-house attorneys for the receiving party. (*Id.* at 5, ¶ 7(b).)

Protected information identified as "For Outside Counsel Only" (or "Attorney's Eyes Only"), on the other hand, "shall be limited to material that the Producing Party believes in good faith is so commercially sensitive or confidential that the disclosure to employees of another

---

[4] The 2007 Reports are stamped "Confidential Attorneys Eyes Only" and "Confidential – For Outside Counsel Only."

[5] The "Stipulated Protective Order" and the "Stipulated Amended Protective Order" were both entered in case number 09 C 4530, before that case was transferred to the Northern District of Illinois. (*See* 09 C 4530, Dkt. No. 37 (Original), Dkt. No. 52 (Amended).) The "Stipulated Second Amended Protective Order" was entered in case number 08 C 3379, also before case number 09 C 4530 was transferred to the Northern District of Illinois, but by its terms was applicable to both cases. (*See* 08 C 3379, Dkt. No. 95 (Second Amended).) The "Stipulated Third Amended Protective Order" was entered in all three cases on March 12, 2013. (*See* 08 C 3379, Dkt. No. 593 (Third Amended); 09 C 4530, Dkt. No. 1075 (Third Amended); 12 C 3229, Dkt. No. 23 (Third Amended).)

party, even under the restricted terms and conditions applicable to material designated as 'Confidential,' would not provide adequate protection to the interests of the Producing Party." (*Id.* at 3, ¶ 2.) Information that is produced "For Outside Counsel Only" (or "Attorney's Eyes Only") is "restricted in circulation" and is not disclosed to the receiving party's previously-designated in-house counsel. (*Id.* at 6, ¶ 8.)

The Stipulated Second Amended Protective Order further provides that counsel for the receiving party "may challenge the confidential designation of all or any portion" of materials produced under the terms of the protective order by first notifying opposing counsel in writing and then filing a motion with the court. (*Id.* at 4, ¶ 5.) "Upon the filing of such a motion by the Receiving Party, the Producing Party producing the Protected Matters shall have the burden of establishing that the disputed Protected Matters are entitled to confidential treatment." (*Id.*) The Stipulated Third Amended Protective Order, now governing in all cases, is identical to the Stipulated Second Amended Protective Order in all material respects. The court refers to both orders interchangeably as the "Protective Orders" in the remainder of this opinion.

As noted above, at this point in the litigation, Tellabs does not seek full disclosure of the 2007 Reports in their entirety, but instead asks only for permission to disclose the Contested Information to Tellabs' in-house counsel and Tellabs' senior management.

## LEGAL STANDARD

Pursuant to Magistrate Judge Cole's in-court ruling on October 19, 2012, and the terms of the Protective Orders, the Contested Information is currently protected under the classification "For Outside Counsel Only" until further order of the court. Tellabs now seeks to remove this classification, and the burden is on Fujitsu Limited to establish that the Contested Information is entitled to confidential treatment under the terms of the Protective Orders.

The court rejects Fujitsu Limited's assertion that "Tellabs asks this Court to overturn Judge Cole's order." (Fujitsu's Resp. at 2.) As a reading of the full transcript of the October 19, 2012 hearing makes clear, Magistrate Judge Cole anticipated that Tellabs would likely seek to reclassify the confidential status of the 2007 Reports once its outside counsel had an opportunity to review them. (See 10/19/12 Hr'g Tr. at 13:9-11; 13:14-15 ("We can then talk about what these things mean, and then if we have to have some kind of briefing, we will have briefing. . . . [W]e will have to figure out whether [Fujitsu Limited's redactions] [are] legitimate or not legitimate.").) Tellabs now seeks a "further order of the court" in accordance with this understanding; Tellabs does not seek to overturn Magistrate Judge Cole's order. Pursuant to the terms of the Protective Orders, as noted above, it is Fujitsu Limited's burden to establish that the Contested Information is entitled to confidential treatment.

## ANALYSIS

Parties are ordinarily entitled to receive in discovery "any nonprivileged matter that is relevant to any party's claim or defense," including materials that are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In this case, the parties have further voluntarily restricted their own ability to access information produced during the discovery process, if the information produced is appropriately designated as "Confidential Information" or "For Outside Counsel Only." Because Magistrate Judge Cole already determined that the 2007 Reports are relevant and not privileged, the only issue currently before this court is whether the Contested Information is protected under the terms of the Protective Orders.

To receive any protection under the Protective Orders, the Contested Information first must qualify as "Confidential Information." (2d Am. Protective Order at 2, (second) ¶ 1.) In

other words, the Contested Information must be properly categorized as either "confidential, proprietary business information" or a "trade secret." (*Id.* at 2, (first) ¶ 1.)

> Under Illinois law, the term "trade secret" is defined by statute as:
>
> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d). Under the common law, "a trade secret is described as a plan or process, tool, mechanism, compound, or informational data *utilized by a person in his business operations* and known only to him and such limited other persons to whom it may be necessary to confide it." *ILG Indus., Inc. v. Scott*, 273 N.E.2d 393, 395 (Ill. 1971) (emphasis added).

It is undisputed that the 2007 Reports were marked "Confidential & Privileged," and that Fujitsu Limited in fact limited dissemination of the 2007 Reports to its own employees. Fujitsu Limited argues that the Contested Information further qualifies for protection, because it is "highly sensitive to Fujitsu's commercial, technical and legal interests" and Tellabs would gain an "unfair advantage" if it knew "Fujitsu's secrets in how Tellabs might create risks for Fujitsu." (Fujitsu's Resp. at 14-15.) As noted above, Fujitsu Limited generally describes the Contested Information as "Fujitsu's highly sensitive analysis of its own products which, legitimately or not, may be targeted by Tellabs." Fujitsu's Resp. at 13. What Fujitsu Limited euphemistically calls an assessment of its "risks" is simply Fujitsu Limited's stated concern that Tellabs might be able to file a legitimate, or legitimate-seeming, claim for patent infringement against Fujitsu Limited. While the court does not doubt that the Contested Information is "commercially sensitive," and

8

that Fujitsu Limited desires to keep this information confidential from its competitor, Tellabs, this is not the type of information that is legitimately considered to be "proprietary business information" or a "trade secret." *Compare Ball Mem. Hosp., Inc. v. Mutual Hosp. Ins., Inc.*, 784 F.2d 1325, 1345-46 (7th Cir. 1986) (protecting confidential bidding data from disclosure based on concern that competitors could use the data "to raise their prices" or more generally "use it to advantage in the next round of negotiations"); *F.T.C. v. OSF Healthcare Sys.*, No. 11 C 50344, 2012 WL 1144620, at *3 (N.D. Ill. Apr. 5, 2012) (Kapala, J.) (protecting "contract terms, contract negotiations and strategies, and pricing information" as trade secrets). Any business can claim that it derives economic value from keeping quiet suspicions of its own wrongdoing, but that does not turn those suspicions into a trade secret. Notably, Fujitsu Limited has not identified any economic value that it derives from actually using the Contested Information in the operation of its business.

As in *Go-Video vs. Motion Picture Association of America*, the protective orders in this case were designed to protect "[p]rivacy of proprietary information, not immunity from suit." *Go-Video v. Motion Picture Ass'n of Am. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.)*, 10 F.3d 693, 696 (9th Cir. 1993). Because Fujitsu Limited's assessment of its potential liability to Tellabs is not "proprietary business information" or a "trade secret," the court holds that the Contested Information does not qualify for protection under the terms of the Protective Orders.

The court notes Fujitsu Limited's concern that it is being punished for previously objecting to the disclosure and use of the 2007 Reports and the Contested Information. (Fujitsu's Resp. at 24-25.) While this court need not, and does not, make any finding as to Fujitsu Limited's good faith in redacting the 2007 Reports before turning them over to Tellabs on

October 18, 2012, the court assures Fujitsu Limited that these considerations have not factored into its analysis of the pending motion. The court also expresses no opinion as to whether the remainder of the 2007 Reports should remain classified as "for outside counsel only," as that question is no longer properly before the court.

CONCLUSION

For the reasons set forth above, Tellabs' "Motion for Reclassification and Use of Documents Produced Under the Protective Order" (09 C 4530, Dkt. No. 1069) is granted and the court holds that the "Contested Information," as defined by this order, is no longer protected or confidential under the terms of the parties' stipulated amended protective orders or any previous court order in these two related pending cases. Consistent with this holding, Tellabs may disclose the Contested Information to its in-house counsel and senior management in advance of the upcoming April 14, 2013 mediation with Mr. Sternstein. Tellabs' use of the Contested Information in connection with this litigation with Fujitsu Limited is no longer restricted in any way.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: April 5, 2013