UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FUJITSU LTD., <br><br>             Plaintiff <br><br> vs. <br><br> TELLABS, INC. <br> TELLABS OPERATIONS, INC. AND <br> TELLABS NORTH AMERICA, INC., <br>             Defendants. | Civil Action No. 12 CV 03229 <br><br> Judge James F. Holderman <br><br> Jury Trial Demanded |

DEFENDANTS TELLABS, INC.'S, TELLABS OPERATIONS INC.'S, AND
TELLABS NORTH AMERICA, INC.'S ANSWER TO PLAINTIFF FUJITSU LIMITED'S
COMPLAINT FOR PATENT INFRINGEMENT

AND

COUNTERCLAIMS AGAINST PLAINTIFF FUJITSU LIMITED AND FUJITSU NETWORK
COMMUNICATIONS, INC.

FILED WITH REDACTIONS

RESTRICTED DOCUMENT PURSUANT TO LOCAL RULE 26.2.
THIS DOCUMENT IS FILED WITH REDACTIONS PURSUANT TO PARAGRAPHS 21 AND 22
OF THE STIPULATED THIRD AMENDED PROTECTIVE ORDER
ENTERED IN CASE NO. 1:12-CV-03229 ON MARCH 12, 2013 (DKT. 23).

## Part I: Answer to Fujitsu Limited's Complaint

Defendants Tellabs, Inc., Tellabs Operations Inc., and Tellabs North America, Inc. (collectively, "Tellabs") respond to Plaintiff Fujitsu Limited's Complaint for Patent Infringement Against Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc. ("Complaint"), in accordance with the numbered paragraphs thereof, as follows. All allegations of fact and conclusions of law contained in Plaintiff's Complaint are denied, except those specifically admitted herein:

### Nature of the Action

1.      Tellabs admits that Plaintiff's Complaint purports to raise a cause of action for infringement of Fujitsu Limited's U.S. Patent No. 5,526,163 ("the '163 Patent"); U.S. Patent No. 5,521,737 ("the '737 Patent"); U.S. Patent No. 7,227,681 ("the '681 Patent"); and U.S. Patent No. 5,386,418 ("the '418 Patent") (collectively, the "Asserted Fujitsu Limited Patents"). Tellabs denies that it infringes the Asserted Fujitsu Limited Patents in any manner or under any theory. In addition, Tellabs asserts that Fujitsu Limited's claim for infringement of the '418 Patent is barred as a result of this Court's prior judgment that the claims of U.S. Patent No. 5,368,418 are invalid. *See generally* Mem. Op. and Order, Case No. 09-cv-4530, Dkt. 950 (N.D. Ill. Sept. 26, 2012). Fujitsu Limited appealed this Court's judgment of invalidity with respect to the '418 Patent on October 25, 2012. Notice of Appeal, Case No. 09-cv-4530, Dkt. 979 (N.D. Ill. Oct. 25, 2012). Fujitsu Limited's appeal was docketed by the United States Court of Appeals for the Federal Circuit on November 2, 2012. Notice of Docketing, Case No. 13-1052, Dkt. 1 (Fed. Cir. Nov. 2, 2012). On February 26, 2013, Fujitsu Limited moved to withdraw its appeal of this Court's judgment of invalidity with respect to the '418 Patent. Appellant Fujitsu Limited's Unopposed Motion to Withdraw Appeal, Case No. 13-1052, Dkt. 27 (Fed. Cir. Feb. 26, 2013).

On March 26, 2013, the United States Court of Appeals for the Federal Circuit dismissed Fujitsu Limited's appeal, Order, Case No. 13-1052, Dkt. 28 (Fed. Cir. Mar. 26, 2013), and issued a mandate to this Court, Mandate, Case No. 13-1052, Dkt. 29-2 (Fed. Cir. Mar. 26, 2013). Accordingly, this Court's judgment of invalidity with respect to the '418 Patent is final, and Fujitsu Limited is barred from asserting the '418 Patent against Tellabs in this action. *See* Mem. Op. and Order, Case No. 1:12-cv-03229, Dkt. 18, at 1-2 (N.D. Ill. Jan. 30, 2013) ("To the extent Fujitsu Limited raises new theories of infringement, if any, based on the same patents and the same accused products asserted in Case No. 08 C 3379 and Case No. 09 C 4530, the court finds these claims to be barred by the doctrine of claim splitting.").  Accordingly, pursuant to Fed. R. Civ. P. 12(b)(6), Tellabs is filing, concurrently with this answer, a Motion to Dismiss Fujitsu Limited's Claims of Infringement of U.S. Patent No. 5,386,418.

### THE PARTIES

2.      Tellabs admits that the '163 Patent, the '737 Patent, the '681 Patent, and the '418 Patent each identify Fujitsu Limited as the assignee on the cover of the patent.  Tellabs is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 2 of the Complaint and, therefore, denies these allegations.

3.      Tellabs admits that Defendant Tellabs, Inc. is a Delaware corporation having its principal executive offices at One Tellabs Center, 1415 West Diehl Road, Naperville, Illinois 60563 and is doing business in the Northern District of Illinois and the State of Illinois.

4.      Tellabs admits that Defendant Tellabs Operations, Inc. is a Delaware corporation with offices at One Tellabs Center, 1415 West Diehl Road, Naperville, Illinois 60563 and is doing business in the Northern District of Illinois and the State of Illinois.

5.      Tellabs admits that Defendant Tellabs North America, Inc. is a Delaware

corporation with its principal executive offices at One Tellabs Center, 1415 West Diehl Road, Naperville, Illinois 60563 and is doing business in the Northern District of Illinois and the State of Illinois.

6.     Tellabs admits that one or more of the Defendants uses certain optical communication products in the United States.  Tellabs also admits that one or more of the Defendants has offered for sale and/or sold certain optical communication products in the United States, including in the State of Illinois.  Tellabs also admits that Tellabs North America, Inc. has offered for sale and/or sold certain optical communication products comprising components or modules in the Northern District of Illinois and elsewhere in the United States since before the filing of this lawsuit.  Tellabs denies the remaining allegations contained in paragraph 6 of the Complaint and, in particular, denies that any optical communication product, component, or module that has been manufactured, assembled, used, offered for sale, and/or sold in the United States actually infringes any of the Asserted Fujitsu Limited Patents.

7.     Tellabs denies that it has infringed or continues to infringe any patents purportedly owned by Fujitsu Limited and, in particular, denies that it has infringed or continues to infringe any of the Asserted Fujitsu Limited Patents.  Tellabs admits that Plaintiff purports to seek monetary damages and an injunction but denies Plaintiff's entitlement to same.  Tellabs denies the remaining allegations contained in paragraph 7 of the Complaint.

### JURISDICTION AND VENUE

8.     Tellabs admits that this action purports to arise under the patent laws of the Untied States, Title 35, United States Code.  Tellabs does not contest this Court's subject matter jurisdiction.

9.     Tellabs admits that its principal offices and corporate headquarters are in the

Northern District of Illinois.

10.     Tellabs admits that the Northern District of Illinois is the proper venue for this action.

**RESPONSE TO FUJITSU LIMITED'S FIRST CLAIM FOR PATENT INFRINGEMENT**
(Alleged Infringement of U.S. Patent 7,227,681)

11.     Tellabs refers to and incorporates herein its responses to paragraphs 1-10 above.

12.     Tellabs admits that the United States Patent and Trademark Office ("USPTO") issued the '681 Patent, entitled "Controller Which Controls a Variable Optical Attenuator to Control the Power Level of a Wavelength-Multiplexed Optical Signal When the Number of Channels are Varied," on June 5, 2007, identifying Fujitsu Limited as the assignee on the cover of the patent. Tellabs admits that a copy of what appears to be the '681 Patent is attached as Exhibit A to the Complaint Fujitsu Limited filed with this Court. Tellabs denies that the '681 Patent was validly issued. Tellabs is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 12 of the Complaint and, therefore, denies these allegations.

13.     Tellabs is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint and, therefore, denies these allegations.

14.     Tellabs denies the allegations in paragraph 14 of the Complaint.

15.     Tellabs denies the allegations in paragraph 15 of the Complaint.

16.     Tellabs denies the allegations in paragraph 16 of the Complaint.

17.     Tellabs denies the allegations in paragraph 17 of the Complaint.

**RESPONSE TO FUJITSU LIMITED'S SECOND CLAIM FOR PATENT INFRINGEMENT**
(Alleged Infringement of U.S. Patent 5,526,163)

18.    Tellabs refers to and incorporates herein its responses to paragraphs 1-10 above.

19.    Tellabs admits that the USPTO issued the '163 Patent, entitled "Optical Amplifier and Optical Communication System with Optical Amplifier Using Pumping Light Beam," on June 11, 1996, identifying Fujitsu Limited as the assignee on the cover of the patent.  Tellabs admits that a copy of what appears to be the '163 Patent was attached as Exhibit B to the Complaint filed with this Court.  Tellabs denies that the '163 Patent was validly issued.  Tellabs is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 19 of the Complaint and, therefore, denies these allegations.

20.    Tellabs is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint and, therefore, denies these allegations.

21.    Tellabs denies the allegations in paragraph 21 of the Complaint.

22.    Tellabs denies the allegations in paragraph 22 of the Complaint.

23.    Tellabs denies the allegations in paragraph 23 of the Complaint.

24.    Tellabs denies the allegations in paragraph 24 of the Complaint.

### RESPONSE TO FUJITSU LIMITED'S THIRD CLAIM FOR PATENT INFRINGEMENT
(Alleged Infringement of U.S. Patent 5,521,737)

25.    Tellabs refers to and incorporates herein its responses to paragraphs 1-10 above.

26.    Tellabs admits that the USPTO issued the '737 Patent, entitled "Optical Amplifier and Optical Communication System with Optical Amplifier Using Pumping Light Beam," on May 28, 1996, identifying Fujitsu as the assignee on the cover of the patent.  Tellabs admits that a copy of what appears to be the '737 Patent was attached as Exhibit C to the Complaint filed with this Court.  Tellabs denies that the '737 Patent was validly issued.  Tellabs is without

knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in paragraph 26 of the Complaint and, therefore, denies these allegations.

27.     Tellabs is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint and, therefore, denies these allegations.

28.     Tellabs denies the allegations in paragraph 28 of the Complaint.

29.     Tellabs denies the allegations in paragraph 29 of the Complaint.

30.     Tellabs denies the allegations in paragraph 30 of the Complaint.

31.     Tellabs denies the allegations in paragraph 31 of the Complaint.

**RESPONSE TO FUJITSU LIMITED'S FOURTH CLAIM FOR PATENT INFRINGEMENT**
(Alleged Infringement of U.S. Patent 5,386,418)

32.     Tellabs refers to and incorporates herein its responses to paragraphs 1-10 above.

33.     As explained in Tellabs' response to paragraph 1, above, Fujitsu Limited's claim for infringement of the '418 Patent is barred as a result of this Court's prior judgment that the claims of U.S. Patent No. 5,368,418 are invalid.  *See generally* Mem. Op. and Order, Case No. 09-cv-4530, Dkt. 950 (N.D. Ill. Sept. 26, 2012); *see also* Mem. Op. and Order, Case No. 1:12-cv-03229, Dkt. 18, at 1-2 (N.D. Ill. Jan. 30, 2013) ("To the extent Fujitsu Limited raises new theories of infringement, if any, based on the same patents and the same accused products asserted in Case No. 08 C 3379 and Case No. 09 C 4530, the court finds these claims to be barred by the doctrine of claim splitting.").  Pursuant to Fed. R. Civ. P. 12(b)(6), Tellabs is filing, concurrently with this answer, a Motion to Dismiss Fujitsu Limited's Claims of Infringement of U.S. Patent No. 5,386,418.  Accordingly, Tellabs denies the allegations in paragraph 33 of the Complaint.

34.     As explained in Tellabs' response to paragraph 1, above, Fujitsu Limited's claim

for infringement of the '418 Patent is barred as a result of this Court's prior judgment that the claims of U.S. Patent No. 5,368,418 are invalid. *See generally* Mem. Op. and Order, Case No. 09-cv-4530, Dkt. 950 (N.D. Ill. Sept. 26, 2012); *see also* Mem. Op. and Order, Case No. 1:12-cv-03229, Dkt. 18, at 1-2 (N.D. Ill. Jan. 30, 2013) ("To the extent Fujitsu Limited raises new theories of infringement, if any, based on the same patents and the same accused products asserted in Case No. 08 C 3379 and Case No. 09 C 4530, the court finds these claims to be barred by the doctrine of claim splitting."). Pursuant to Fed. R. Civ. P. 12(b)(6), Tellabs is filing, concurrently with this answer, a Motion to Dismiss Fujitsu Limited's Claims of Infringement of U.S. Patent No. 5,386,418. Accordingly, Tellabs denies the allegations in paragraph 34 of the Complaint.

35.     As explained in Tellabs' response to paragraph 1, above, Fujitsu Limited's claim for infringement of the '418 Patent is barred as a result of this Court's prior judgment that the claims of U.S. Patent No. 5,368,418 are invalid. *See generally* Mem. Op. and Order, Case No. 09-cv-4530, Dkt. 950 (N.D. Ill. Sept. 26, 2012); *see also* Mem. Op. and Order, Case No. 1:12-cv-03229, Dkt. 18, at 1-2 (N.D. Ill. Jan. 30, 2013) ("To the extent Fujitsu Limited raises new theories of infringement, if any, based on the same patents and the same accused products asserted in Case No. 08 C 3379 and Case No. 09 C 4530, the court finds these claims to be barred by the doctrine of claim splitting."). Pursuant to Fed. R. Civ. P. 12(b)(6), Tellabs is filing, concurrently with this answer, a Motion to Dismiss Fujitsu Limited's Claims of Infringement of U.S. Patent No. 5,386,418. Accordingly, Tellabs denies the allegations in paragraph 35 of the Complaint.

36.     As explained in Tellabs' response to paragraph 1, above, Fujitsu Limited's claim for infringement of the '418 Patent is barred as a result of this Court's prior judgment that the

claims of U.S. Patent No. 5,368,418 are invalid. *See generally* Mem. Op. and Order, Case No. 09-cv-4530, Dkt. 950 (N.D. Ill. Sept. 26, 2012); *see also* Mem. Op. and Order, Case No. 1:12-cv-03229, Dkt. 18, at 1-2 (N.D. Ill. Jan. 30, 2013) ("To the extent Fujitsu Limited raises new theories of infringement, if any, based on the same patents and the same accused products asserted in Case No. 08 C 3379 and Case No. 09 C 4530, the court finds these claims to be barred by the doctrine of claim splitting."). Pursuant to Fed. R. Civ. P. 12(b)(6), Tellabs is filing, concurrently with this answer, a Motion to Dismiss Fujitsu Limited's Claims of Infringement of U.S. Patent No. 5,386,418. Accordingly, Tellabs denies the allegations in paragraph 36 of the Complaint.

37.    As explained in Tellabs' response to paragraph 1, above, Fujitsu Limited's claim for infringement of the '418 Patent is barred as a result of this Court's prior judgment that the claims of U.S. Patent No. 5,368,418 are invalid. *See generally* Mem. Op. and Order, Case No. 09-cv-4530, Dkt. 950 (N.D. Ill. Sept. 26, 2012); *see also* Mem. Op. and Order, Case No. 1:12-cv-03229, Dkt. 18, at 1-2 (N.D. Ill. Jan. 30, 2013) ("To the extent Fujitsu Limited raises new theories of infringement, if any, based on the same patents and the same accused products asserted in Case No. 08 C 3379 and Case No. 09 C 4530, the court finds these claims to be barred by the doctrine of claim splitting."). Pursuant to Fed. R. Civ. P. 12(b)(6), Tellabs is filing, concurrently with this answer, a Motion to Dismiss Fujitsu Limited's Claims of Infringement of U.S. Patent No. 5,386,418. Accordingly, Tellabs denies the allegations in paragraph 37 of the Complaint.

38.    As explained in Tellabs' response to paragraph 1, above, Fujitsu Limited's claim for infringement of the '418 Patent is barred as a result of this Court's prior judgment that the claims of U.S. Patent No. 5,368,418 are invalid. *See generally* Mem. Op. and Order, Case No.

09-cv-4530, Dkt. 950 (N.D. Ill. Sept. 26, 2012); *see also* Mem. Op. and Order, Case No. 1:12-cv-03229, Dkt. 18, at 1-2 (N.D. Ill. Jan. 30, 2013) ("To the extent Fujitsu Limited raises new theories of infringement, if any, based on the same patents and the same accused products asserted in Case No. 08 C 3379 and Case No. 09 C 4530, the court finds these claims to be barred by the doctrine of claim splitting."). Pursuant to Fed. R. Civ. P. 12(b)(6), Tellabs is filing, concurrently with this answer, a Motion to Dismiss Fujitsu Limited's Claims of Infringement of U.S. Patent No. 5,386,418. Accordingly, Tellabs denies the allegations in paragraph 38 of the Complaint.

## RESPONSE TO FUJITSU LIMITED'S PRAYER FOR RELIEF

Tellabs denies that Plaintiff is entitled to any relief whatsoever and denies all of the allegations contained in paragraphs a – f of Plaintiff's Prayer for Relief.

## TELLABS' AFFIRMATIVE AND OTHER DEFENSES

39.     Tellabs reserves the right to later request the addition of, or assert claims against, third parties. Tellabs also asserts the following affirmative and other defenses and reserves the right to amend its Answer as additional information becomes available:

## TELLABS' FIRST AFFIRMATIVE DEFENSE
(*Res Judicata*, Lack of Subject Matter Jurisdiction, and/or
Failure to State a Claim on Which Relief May be Granted)

40.     Fujitsu Limited's claim for infringement of the '418 Patent is barred as a result of this Court's prior judgment that the claims of U.S. Patent No. 5,368,418 are invalid. *See generally* Mem. Op. and Order, Case No. 09-cv-4530, Dkt. 950 (N.D. Ill. Sept. 26, 2012). Fujitsu Limited appealed this Court's judgment of invalidity with respect to the '418 Patent on October 25, 2012. Notice of Appeal, Case No. 09-cv-4530, Dkt. 979 (N.D. Ill. Oct. 25, 2012). On February 26, 2013, Fujitsu Limited moved to withdraw its appeal of this Court's judgment of

invalidity with respect to the '418 Patent. Appellant Fujitsu Limited's Unopposed Motion to Withdraw Appeal, Case No. 13-1052, Dkt. 27 (Fed. Cir. Feb. 26, 2013). On March 26, 2013, the United States Court of Appeals for the Federal Circuit dismissed Fujitsu Limited's appeal, Order, Case No. 13-1052, Dkt. 28 (Fed. Cir. Mar. 26, 2013), and issued a mandate to this Court, Mandate, Case No. 13-1052, Dkt. 29-2 (Fed. Cir. Mar. 26, 2013). Accordingly, this Court's judgment of invalidity with respect to the '418 Patent is final, and Fujitsu Limited is barred from asserting the '418 Patent against Tellabs in this action. *See* Mem. Op. and Order, Case No. 1:12-cv-03229, Dkt. 18, at 1-2 (N.D. Ill. Jan. 30, 2013) ("To the extent Fujitsu Limited raises new theories of infringement, if any, based on the same patents and the same accused products asserted in Case No. 08 C 3379 and Case No. 09 C 4530, the court finds these claims to be barred by the doctrine of claim splitting.").

41.    This Court lacks jurisdiction to grant relief on a claim for infringement of an invalid patent. Therefore, this Court lacks jurisdiction to grant relief to Fujitsu Limited on its claim for infringement of the '418 Patent.

42.    Pursuant to Fed. R. Civ. P. 12(b)(6), Fujitsu Limited has failed to state a claim upon which relief may be granted.

### TELLABS' SECOND AFFIRMATIVE DEFENSE
(Non-Infringement)

43.    Tellabs does not infringe and has not infringed, directly or indirectly, any valid claim of the '681 Patent, willfully or otherwise.

44.    Tellabs does not infringe and has not infringed, directly or indirectly, any valid claim of the '163 Patent, willfully or otherwise.

45.    Tellabs does not infringe and has not infringed, directly or indirectly, any valid claim of the '737 Patent, willfully or otherwise.

## TELLABS' THIRD AFFIRMATIVE DEFENSE
(Invalidity)

46.     The claims of the '681 Patent are invalid for failing to comply with one or more requirements of the patent laws of the United States, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

47.     The claims of the '163 Patent are invalid for failing to comply with one or more requirements of the patent laws of the United States, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

48.     The claims of the '737 Patent are invalid for failing to comply with one or more requirements of the patent laws of the United States, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

## TELLABS' FOURTH AFFIRMATIVE DEFENSE
(Prosecution History Estoppel)

49.     Plaintiff Fujitsu Limited is estopped by representations or actions taken during the prosecution of the '681 Patent under the doctrine of prosecution history estoppel.

50.     Plaintiff Fujitsu Limited is estopped by representations or actions taken during the prosecution of the '163 Patent under the doctrine of prosecution history estoppel.

51.     Plaintiff Fujitsu Limited is estopped by representations or actions taken during the prosecution of the '737 Patent under the doctrine of prosecution history estoppel.

## TELLABS' FIFTH AFFIRMATIVE DEFENSE
(EQUITABLE ESTOPPEL / UNCLEAN HANDS)

52.     Plaintiff Fujitsu Limited's claim for infringement of the Asserted Fujitsu Limited Patents is barred or limited by the doctrines of equitable estoppel and/or unclean hands as demonstrated by the following exemplary facts:

53.     Fujitsu Limited, acting in concert with and/or by directing the actions of its

wholly-owned subsidiary FNC, misappropriated information regarding the design and operation of optical amplifiers designed and marketed by Tellabs as part of the Tellabs 7100 Optical Transport System and the Tellabs 7100 Nano Optical Transport System in order to improve the operation of optical amplifiers designed by Fujitsu Limited and marketed in the United States by FNC as follows.

54. Tellabs takes a variety of measures to maintain the confidentiality of information concerning the design and operation of its optical amplifiers and to prevent such information from being disclosed to other companies that manufacture or sell optical amplifiers. For example, Tellabs generally provides its software and manuals only to customers, subject to the terms of a "shrink-wrap," non-transferable license agreement ("License Agreement") (Exhibit C). Section 3 of the License Agreement, labeled "Confidentiality," states that "the Licensed Materials furnished by Tellabs hereunder are, and shall continue to be, proprietary property of and shall constitute trade secrets of Tellabs or its licensor(s)." Tellabs also includes a copyright statement at the beginning of each manual limiting the use and reproduction of the manual. Tellabs also maintains internal rules, policies, and guidelines and a corporate culture by which business and technical information is protected and not shared with unknown or unauthorized parties. For example, Paragraph 3(a) of Tellabs' Proprietary Information and Inventions Agreement, signed by new Tellabs hires, requires employees to agree that "[a]t all times, both during my employment by the Company and after its termination, I will not use or disclose, nor assist or authorize anyone else in using or disclosing, any Proprietary Information without the written consent of the Company, except as may be necessary in the ordinary course of performing my duties to the Company. I also agree to use my best efforts to otherwise safeguard all Proprietary Information so that it is not made available to unauthorized persons or entities."

55.     In order to prevent unauthorized companies from reverse engineering Tellabs' optical amplifiers, or otherwise inspecting or studying the internal design and structure of Tellabs' optical amplifiers, Tellabs generally will not sell its optical amplifiers to companies that manufacture or sell optical amplifiers, unless it is in furtherance of an established strategic commercial relationship between the parties.

56.     Fujitsu Limited designs optical amplifiers that are marketed and sold by FNC in the United States.  In 2005, Tellabs competed against FNC in a proposal process to sell new optical telecommunications equipment, including optical amplifiers, to Verizon.  FNC offered, in its proposal to Verizon in 2005, to sell telecommunications equipment, including optical amplifiers, designed by Fujitsu Limited.  Ultimately, Tellabs prevailed over FNC, and Verizon selected Tellabs as its primary supplier of new telecommunications equipment, including optical amplifiers. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

57.     After FNC lost the Verizon proposal to Tellabs Operations, representatives of FNC and Fujitsu Limited spoke with Verizon and were told that the optical amplifiers designed by Fujitsu Limited and offered by FNC were inferior to the optical amplifiers designed and offered by Tellabs.  *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).  Verizon described the technology used in the optical amplifiers designed by Fujitsu Limited and marketed by FNC as being "old" and "weak." *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

58.     Upon hearing Verizon's critical review of the optical amplifiers designed by Fujitsu Limited and marketed by FNC, Fujitsu Limited and FNC entered a state of "corporate panic." *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). Fujitsu Limited and FNC began a "post mortem" analysis to determine how to recover in the face

of Tellabs' more advanced technology ("Post Mortem Analysis"). *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

59.    In Tellabs' proposal to Verizon, Tellabs offered to sell the Tellabs 7100 Optical Transport System.  As part of the proposal process, Tellabs prepared a presentation entitled "Tellabs 7100 Optical Transport Platform System and Applications Overview" (hereinafter "Tellabs 7100 Verizon Presentation") and presented it to employees of Verizon.  The Tellabs 7100 Verizon Presentation described features of the Tellabs 7100 Optical Transport System, including features of Tellabs' optical amplifiers, such as the ability of the amplifiers' gain control algorithm to automatically adjust for sudden changes in span loss and the ability to upgrade Tellabs' in-line amplifiers ("ILAs") to reconfigurable optical add-drop multiplexers ("ROADMs") while in service ("in-service upgrade").  Each page of the Tellabs 7100 Verizon Presentation was marked with the following notification:  "Not for use or disclosure outside the Verizon Companies except under written agreement."

60.    ███████████████████████████████████████████████

███████████████████████████████████

61.    ███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████

62.    When Fujitsu Limited and FNC began the Post Mortem Analysis, they knew "nothing at all" about the equipment that Tellabs offered to Verizon. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

63. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

64. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



65. ██████████████████████████████████

████████████████████████████████████████

██████████████████ ████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

66. ██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████ For example,

Paragraph 3(a) of Tellabs' Proprietary Information and Inventions Agreement, signed by new

Tellabs hires, requires employees to agree that "[a]t all times, both during my employment by the

Company and after its termination, I will not use or disclose, nor assist or authorize anyone else

in using or disclosing, any Proprietary Information without the written consent of the Company,

except as may be necessary in the ordinary course of performing my duties to the Company.  I

also agree to use my best efforts to otherwise safeguard all Proprietary Information so that it is

not made available to unauthorized persons or entities."

67. ██████████████████████████████████

████ Fujitsu Limited and FNC became "consumed with the competitive business need to

examine the Tellabs optical amplifier, whose technology Verizon had concluded was far superior

to Fujitsu's," in order to modify and improve the optical amplifiers that were designed by Fujitsu

Limited and marketed by FNC.  *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 388

(N.D. Ill. 2012). Fujitsu Limited specifically asked FNC to acquire Tellabs' optical amplifiers in order to research the features and operation of Tellabs' optical amplifiers. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

68.     In August 2006, employees of Fujitsu Limited and/or FNC, including Ted van Ryn, head of FNC's competitive intelligence group, located and purchased a "Buy It Now" listing on eBay for approximately 1400 lbs. of salvaged Tellabs 7100 equipment along with supporting software and documentation. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377-378 (N.D. Ill. 2012). The salvaged Tellabs 7100 equipment was listed on eBay by a third party unrelated to and unaffiliated with Tellabs. The equipment listed on eBay by this third party included examples of the optical amplifiers used in a Tellabs 7100 Optical Transport System. The equipment and documentation listed on eBay by this third party also included manuals for the Tellabs 7100 Optical Transport System ("Tellabs 7100 Manuals") and software for the Tellabs 7192 Integrated System Manager.

69.     FNC, acting under the authorization and/or direction of Fujitsu Limited, acquired the salvaged Tellabs 7100 equipment, the Tellabs 7100 Manuals, and the Tellabs 7192 Integrated System Manager software through the eBay listing while taking measures to hide its and Fujitsu Limited's identities from the seller. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). ████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████

70.     The salvaged Tellabs 7100 equipment that Ted van Ryn obtained through the eBay listing included at least three optical amplifier modules. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). FNC sent these three optical amplifier modules to Japan to be inspected by engineers at Fujitsu Limited as part of the Post Mortem Analysis. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). The salvaged Tellabs 7100 equipment that Ted van Ryn obtained through eBay also came with supporting documentation and software. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 378 (N.D. Ill. 2012). The supporting documentation included the Tellabs 7100 Manuals.

71.     The binder containing the Tellabs 7100 Manuals and the Tellabs 7192 Integrated System Manager software included a "shrink-wrap" license agreement ("License Agreement") (Exhibit C) restricting the use of the Tellabs 7100 Manuals and the Tellabs 7192 Integrated System Manager software. Section 2 of the license agreement provides that "the Licensed Materials are to be used…only for the intended use of the Licensed Materials as offered and furnished by Tellabs." Section 3 of the License Agreement, labeled "Confidentiality," states that "the Licensed Materials furnished by Tellabs hereunder are, and shall continue to be, proprietary property of and shall constitute trade secrets of Tellabs or its licensor(s)."

72.     ██████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

73.     On information and belief, the unauthorized copying, distribution, and use of Tellabs' trade secret information as part FNC's and Fujitsu Limited's Post Mortem Analysis facilitated the design and development of improved optical amplifiers by Fujitsu Limited which led to improved market success of optical telecommunications systems sold in the United States by FNC. ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████ On information and belief, FNC became a second supplier to Verizon when it offered to sell the FLASHWAVE 9500 system to Verizon in response to a follow-on RFP in 2007.  On information and belief, FNC has sold the improved FLASHWAVE 7500 and FLASHWAVE 9500 systems to other customers in the United States.

74.     ████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ The lawsuit filed by Fujitsu

Limited in January 2008 involved three of the four patents asserted by Fujitsu Limited in this

lawsuit.

75.     Fujitsu Limited and FNC acted improperly during the prior litigation to prevent

Tellabs from discovering the results of the Post Mortem Analysis and to hide and prevent the

discovery of evidence that contradicted the analysis provided in the expert report of Larry W.

Evans, Fujitsu Limited's expert witness on licensing and royalty rates.  For example, in support

of Fujitsu Limited's and FNC's Motion for Protective Order Relieving it from Responding to

Discovery Relating to Inspection of Tellabs Equipment (Case 1:09-cv-4530, Dkt. 330), FNC's

general counsel, Ms. Wright, submitted a declaration that was found to be "inaccurate,

insufficient, and misleading" by Magistrate Judge Cole.  *Tellabs Operations, Inc. v. Fujitsu

Limited*, 283 F.R.D. 374, 382 (N.D. Ill. 2012).  Mr. Hitoshi Fuji, an employee of Fujitsu Limited,

also submitted a declaration that Magistrate Judge Cole found to be "inaccurate."  *Tellabs

Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 382 (N.D. Ill. 2012).  When Fujitsu Limited

and FNC were ordered by this Court to produce all documents relating to the Post Mortem

Analysis, *see generally* Mem. Op. and Order, Case 1:09-cv-4530, Dkt. 912 (Aug. 29, 2012);

Minute Order, Case 1:09-cv-4530, Dkt. 952 (Sept. 27, 2012), Fujitsu Limited and FNC

improperly redacted those documents, *see* Minute Order, Case 1:09-cv-4530, Dkt. 977 (October

19, 2012), in order to hide evidence ███████████████████████████████████████████

█████████████████████████████████████████████████████████████

### TELLABS' SIXTH AFFIRMATIVE DEFENSE
### (Estoppel / Offer of FRAND License to Industry)

76.     Plaintiff Fujitsu Limited's claim for damages for the alleged infringement of one

or more of the Asserted Fujitsu Limited Patents is barred or limited by Fujitsu Limited's representations to standard-setting organizations that Fujitsu Limited would license patents on Fair, Reasonable, and Non-Discriminatory (FRAND) terms.

### TELLABS' SEVENTH AFFIRMATIVE DEFENSE
(Laches)

77.     Plaintiff Fujitsu Limited's claims under the '681 Patent are barred by laches.

78.     Plaintiff Fujitsu Limited's claims under the '163 Patent are barred by laches.

79.     Plaintiff Fujitsu Limited's claims under the '737 Patent are barred by laches.

### TELLABS' EIGHTH AFFIRMATIVE DEFENSE
(35 U.S.C. § 287)

80.     Plaintiff's claims for patent infringement and damages arising therefrom are limited and/or barred in whole or in part by the provisions of 35 U.S.C. § 287.

### TELLABS' NINTH AFFIRMATIVE DEFENSE
(35 U.S.C. § 286)

81.     Plaintiff's claims for patent infringement and damages arising therefrom are limited by the provisions of 35 U.S.C. § 286.

### EXCEPTIONAL CASE

82.     This is an exceptional case entitling Tellabs to an award of its attorneys' fees incurred in connection with defending and prosecuting this action pursuant to 35 U.S.C. § 285.

### PART II:  COUNTERCLAIMS BY TELLABS OPERATIONS INC. AGAINST PLAINTIFF FUJITSU LIMITED AND JOINED CLAIMS OF TELLABS OPERATIONS, INC. AGAINST FUJITSU NETWORK COMMUNICATIONS, INC.

Pursuant to Rules 13, 18, 19, and/or 20 of the Federal Rules of Civil Procedure, Defendant Tellabs Operations Inc., for its counterclaims against Plaintiff Fujitsu Limited and joined claims against Fujitsu Network Communications, Inc., alleges as follows:

### PARTIES

1. Tellabs Operations, Inc. ("Tellabs Operations") is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at One Tellabs Center, 1415 West Diehl Road, Naperville, Illinois 60563.

2. Fujitsu Limited alleges that it is a corporation organized and existing under the laws of Japan and having a principal place of business at 1-1 Kamikodanaka 4-chome, Nakahara-ku, Kawasaki-shi, Kanagawa-ken, 211-8588 Japan.  On information and belief, Fujitsu Limited is doing business in the Northern District of Illinois and elsewhere in the State of Illinois.

3. On information and belief, Fujitsu Network Communications, Inc. ("FNC") is a corporation organized and existing under the laws of California and having a principal place of business at 2801 Telecom Parkway, Richardson, Texas 75082.  On information and belief, FNC is a wholly owned subsidiary of Fujitsu Limited and is doing business in the Northern District of Illinois and elsewhere in the State of Illinois.  For example, on information an belief, FNC markets, offers to sell, and sells in the United States, including within the Northern District of Illinois, optical amplifiers and telecommunications equipment designed by Fujitsu Limited. FNC is an appropriate party to Tellabs' counterclaims pursuant to Fed. R. Civ. P. 19 and/or 20.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over these Counterclaims pursuant to

28 U.S.C. §§ 1331 and/or 1338.

5.      This Court has personal jurisdiction over Fujitsu Limited with respect to these Counterclaims because Fujitsu Limited is the plaintiff in this action and because Fujitsu Limited has established minimum contacts with the forum, such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice, and has committed acts of patent infringement (described below) in this judicial district.

6.      FNC has admitted that it is subject to personal jurisdiction in this judicial district. (Defendant Fujitsu Network Communications, Inc.'s Answer and Affirmative Defenses to Plaintiff's Complaint and Defendant Fujitsu Network Communications, Inc.'s Counterclaims Against Plaintiff, case 1:08-cv-3379, Dkt. 59, at 4 (September 5, 2008) (Answer by FNC to Complaint Paragraph 7).)  This Court has personal jurisdiction over FNC with respect to these Counterclaims because FNC has established minimum contacts with the forum, such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice, and has committed acts of patent infringement (described below) in this judicial district.

7.      Venue is proper in this judicial district and before this Court for these Counterclaims pursuant to 28 U.S.C. § 1391(b) and (c) and § 1400(b).

### TELLABS OPERATIONS' FIRST CLAIM AGAINST FUJITSU LIMITED AND FNC
(Infringement of U.S. Patent No. 6,285,480)

8.      Tellabs Operations incorporates the allegations in paragraphs 1 through 7 of these counterclaims (Part II) as if fully set forth herein.

9.      Tellabs Operations is the assignee and owner of all rights, title, and interest in U.S. Patent No. 6,285,480 ("the '480 Patent"), entitled "Method and an Amplifier Unit for the Transmission of Data Signals Via an Optical Fiber."  The '480 Patent was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on September 4, 2001.  A

true and correct copy of the '480 Patent is attached hereto as Exhibit A.

10.     On information and belief, FNC has directly infringed, is directly infringing, and continues to directly infringe the '480 Patent pursuant to 35 U.S.C. § 271(a) by using or operating, within the United States, optical communication products and systems that, by their operation, fall within the scope of one or more claims of the '480 Patent either literally or under the doctrine of equivalents.  Such products and systems include, but are not limited to, the FLASHWAVE 7500 system, the FLASHWAVE 9500 system, and/or the modules or components thereof, including but not limited to optical amplifier modules, optical supervisory channel processing modules, and management control modules ("the '480 Accused Products").

11.     On information and belief, FNC has indirectly infringed, is indirectly infringing, and continues to indirectly infringe the '480 Patent, either by inducing infringement by others, literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(b) and/or by contributing to infringement by others, literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(c).  In particular, on information and belief, FNC has sold, offered to sell, and imported; is selling, offering to sell, and importing; and continues to sell, offer to sell, and import, either directly or through other companies for resale, the '480 Accused Products to customers for use and operation in the United States, including within the State of Illinois and this judicial district.  FNC has known since approximately January 2007 of the existence of the '480 Patent and that the use or operation of the '480 Accused Products within the United States "related to" or would constitute infringement of one or more claims of the '480 Patent.  On information and belief, FNC has sold, offered to sell, and imported; is selling, offering to sell, and importing; and continues to sell, offer to sell, and import the '480 Accused Products with the knowledge that the '480 Accused Products (a) are especially made or especially adapted for use

in an infringement of the '480 Patent and (b) are not a staple article or commodity of commerce suitable for substantial noninfringing use. On information and belief, FNC has acted to assist or cause the infringement of the '480 Patent by customers who purchased the '480 Accused Products by, for example, providing training, technical support, installation services, and/or user manuals that assisted and/or instructed such customers to use or operate the '480 Accused Products in a manner that infringed one or more claims of the '480 Patent. On information and belief, FNC has provided such training, technical support, installation services, and/or user manuals to purchasers of the '480 Accused Products who have used and operated the '480 Accused Products within the State of Illinois and this judicial district.

12.     On information and belief, Fujitsu Limited has directly infringed, is directly infringing, and continues to directly infringe the '480 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a) by using or operating the '480 Accused Products within the United States.

13.     On information and belief, Fujitsu Limited has indirectly infringed, is indirectly infringing, and continues to indirectly infringe the '480 Patent, either by inducing infringement by others, literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(b) and/or by contributing to infringement by others, literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(c). In particular, Fujitsu Limited designed and continues to develop the '480 Accused Products and has sold, offered to sell, and imported; is selling, offering to sell, and importing; and continues to sell, offer to sell, and import modules or components of the '480 Accused Products to FNC for resale to FNC's customers in the United States, including within the State of Illinois and this judicial district. Fujitsu Limited has known since January 2007 of the existence of the '480 Patent and that the use or operation of the '480 Accused Products

within the United States "related to" or would constitute infringement of one or more claims of the '480 Patent. On information and belief, Fujitsu Limited has sold, offered to sell, and imported; is selling, offering to sell, and importing; and continues to sell, offer to sell, and import modules or components of the '480 Accused Products to FNC with the knowledge that those modules or components are (a) are especially made or especially adapted for use in an infringement of the '480 Patent and (b) are not a staple article or commodity of commerce suitable for substantial noninfringing use. On information and belief, Fujitsu Limited provides information, materials, and support to FNC to assist FNC in marketing and selling the '480 Accused Products within the United States, including within the State of Illinois and this judicial district. On information and belief, Fujitsu Limited provides information, materials, and support to FNC in order to assist FNC in providing training, technical support, installation services, and/or user manuals to purchasers of the '480 Accused Products in the United States, including purchasers within the State of Illinois and this judicial district, that have assisted and/or instructed such purchasers to use or operate the '480 Accused Products in a manner that infringed one or more claims of the '480 Patent.

14. Fujitsu Limited's and FNC's past and continued acts of direct and/or indirect infringement of the '480 Patent have injured Tellabs Operations; therefore, Tellabs Operations is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

15. Fujitsu Limited's and FNC's direct and/or indirect infringement of Tellabs Operations' exclusive rights under the '480 Patent will continue to damage Tellabs Operations' business and cause irreparable injury to Tellabs Operations for which there is no adequate remedy at law unless Fujitsu Limited and FNC are enjoined by this Court from further

infringement.

16.     On information and belief, Fujitsu Limited's and FNC's acts of direct and/or indirect infringement have been committed willfully and, if not ceased immediately, will continue to be committed willfully, with full knowledge and wanton disregard of Tellabs Operations' rights under the '480 Patent, entitling Tellabs Operations to recover treble damages pursuant to 35 U.S.C. § 284.

17.     On information and belief, Fujitsu Limited and FNC have attempted to hide, or prevent the discovery of, evidence of direct and/or indirect infringement of the '480 Patent by improperly redacting documents that Fujitsu Limited and FNC were ordered by this Court to produce to Tellabs Operations in civil action nos. 1:08-cv-3379 and 1:09-cv-4530. *See* Minute Order, Case 1:09-cv-4530, Dkt. 977 (October 19, 2012).

18.     Fujitsu Limited's and FNC's willful acts of direct and/or indirect infringement, alone or in combination with Fujitsu Limited's and FNC's attempts to hide, or prevent the discovery of, evidence of infringement, make this an exceptional case pursuant to 35 U.S.C. § 285.

### TELLABS OPERATIONS' SECOND CLAIM AGAINST FUJITSU LIMITED AND FNC
(Infringement of U.S. Patent No. 7,103,063)

19.     Tellabs incorporates the allegations in paragraphs 1 through 7 of these counterclaims (Part II) as if fully set forth herein.

20.     Tellabs Operations is the assignee and owner of all rights, title, and interest in U.S. Patent No. 7,103,063 ("the '063 Patent"), entitled "Apparatus and Method for Facilitating Data Packet Transportation." The '063 Patent was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on September 5, 2006. A true and correct copy of the '063 Patent is attached hereto as Exhibit B.

21.     On information and belief, FNC has directly infringed, is directly infringing, and continues to directly infringe the '063 Patent pursuant to 35 U.S.C. § 271(a) by using or operating, within the United States, optical communication products and systems that, by their operation, fall within the scope of one or more claims of the '063 Patent either literally or under the doctrine of equivalents.   Such products and systems include, but are not limited to, the FLASHWAVE 4500 system and the FLASHWAVE 4100 system ("the '063 Accused Products").

22.     On information and belief, FNC has indirectly infringed, is indirectly infringing, and continues to indirectly infringe the '063 Patent, either by inducing infringement by others, literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(b) and/or by contributing to infringement by others, literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(c).  In particular, FNC has sold, offered to sell, and imported; is selling, offering to sell, and importing; and continues to sell, offer to sell, and import, either directly or through other companies for resale, the '063 Accused Products to customers for use and operation in the United States, including within the State of Illinois and this judicial district.  FNC has known since approximately January 2007 of the existence of the '063 Patent and that the use or operation of the '063 Accused Products within the United States  "related to" or would constitute infringement of one or more claims of the '063 Patent.  On information and belief, FNC has sold, offered to sell, and imported; is selling, offering to sell, and importing; and continues to sell, offer to sell, and import the '063 Accused Products with the knowledge that the '063 Accused Products (a) are especially made or especially adapted for use in an infringement of the '063 Patent and (b) are not a staple article or commodity of commerce suitable for substantial noninfringing use.  On information and belief, FNC has acted to assist or cause the infringement

of the '063 Patent by customers who purchased the '063 Accused Products by, for example, providing training, technical support, installation services, and/or user manuals that assisted and/or instructed such customers to use or operate the '063 Accused Products in a manner that infringed one or more claims of the '063 Patent. On information and belief, FNC has provided such training, technical support, installation services, and/or user manuals to purchasers of the '063 Accused Products who have used and operated the '063 Accused Products within the State of Illinois and this judicial district.

23. On information and belief, Fujitsu Limited has directly infringed, is directly infringing, and continues to directly infringe the '063 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(a) by using or operating the '063 Accused Products within the United States.

24. On information and belief, Fujitsu Limited has indirectly infringed, is indirectly infringing, and continues to indirectly infringe the '063 Patent, either by inducing infringement by others, literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(b) and/or by contributing to infringement by others, literally or under the doctrine of equivalents, pursuant to 35 U.S.C. § 271(c). In particular, Fujitsu Limited designed and continues to develop the '063 Accused Products and has sold, offered to sell, and imported; is selling, offering to sell, and importing; and continues to sell, offer to sell, and import modules or components of the '063 Accused Products to FNC for resale to FNC's customers in the United States, including within the State of Illinois and this judicial district. Fujitsu Limited has known since January 2007 of the existence of the '063 Patent and that the use or operation of the '063 Accused Products within the United States "related to" or would constitute infringement of one or more claims of the '063 Patent. On information and belief, Fujitsu Limited has sold, offered to sell, and

imported; is selling, offering to sell, and importing; and continues to sell, offer to sell, and import modules or components of the '063 Accused Products to FNC with the knowledge that those modules or components (a) are especially made or especially adapted for use in an infringement of the '063 Patent and (b) are not a staple article or commodity of commerce suitable for substantial noninfringing use.  On information and belief, Fujitsu Limited provides information, materials, and support to FNC to assist FNC in marketing and selling the '063 Accused Products within the United States, including within the State of Illinois and this judicial district.  On information and belief, Fujitsu Limited provides information, materials, and support to FNC in order to assist FNC in providing training, technical support, installation services, and/or user manuals to purchasers of the '063 Accused Products in the United States, including purchasers within the State of Illinois and this judicial district, that have assisted and/or instructed such purchasers to use or operate the '063 Accused Products in a manner that infringed one or more claims of the '063 Patent.

25.     Fujitsu Limited's and FNC's past and continued acts of direct and/or indirect infringement of the '063 Patent have injured Tellabs Operations; therefore, Tellabs Operations is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

26.     Fujitsu Limited's and FNC's direct and/or indirect infringement of Tellabs Operations' exclusive rights under the '063 Patent will continue to damage Tellabs Operations' business and cause irreparable injury to Tellabs Operations for which there is no adequate remedy at law unless Fujitsu Limited and FNC are enjoined by this Court from further infringement.

27.     On information and belief, Fujitsu Limited's and FNC's acts of direct and/or

indirect infringement have been committed willfully and, if not ceased immediately, will continue to be committed willfully, with full knowledge and wanton disregard of Tellabs Operations' rights under the '063 Patent, entitling Tellabs Operations to recover treble damages pursuant to 35 U.S.C. § 284.

28.     On information and belief, Fujitsu Limited and FNC have attempted to hide, or prevent the discovery of, evidence of direct and/or indirect infringement of the '063 Patent by improperly redacting documents that Fujitsu Limited and FNC were ordered by this Court to produce to Tellabs Operations in civil action nos. 1:08-cv-3379 and 1:09-cv-4530. *See* Minute Order, Case 1:09-cv-4530, Dkt. 977 (October 19, 2012).

29.     Fujitsu Limited's and FNC's willful acts of direct and/or indirect infringement, alone or in combination with Fujitsu Limited's and FNC's attempts to hide, or prevent the discovery of, evidence of infringement, make this an exceptional case pursuant to 35 U.S.C. § 285.

### PART III:  COUNTERCLAIMS BY TELLABS, INC., TELLABS OPERATIONS INC., AND TELLABS NORTH AMERICA, INC. AGAINST PLAINTIFF FUJITSU LIMITED AND JOINED CLAIMS AGAINST FUJITSU NETWORK COMMUNICATIONS, INC.

Pursuant to Rules 13, 18, 19, and/or 20 of the Federal Rules of Civil Procedure, Defendants Tellabs, Inc., Tellabs Operations Inc., and Tellabs North America, Inc. (collectively, "Tellabs"), for their counterclaims against Plaintiff Fujitsu Limited and joined claims against Fujitsu Network Communications, Inc., allege as follows:

### PARTIES

1.      Tellabs, Inc. is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at One Tellabs Center, 1415 West Diehl Road, Naperville, Illinois 60563.

2.      Tellabs Operations, Inc. ("Tellabs Operations") is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at One Tellabs Center, 1415 West Diehl Road, Naperville, Illinois 60563.

3.      Tellabs North America, Inc. is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at One Tellabs Center, 1415 West Diehl Road, Naperville, Illinois 60563.

4.      Fujitsu Limited alleges that it is a corporation organized and existing under the laws of Japan and having a principal place of business at 1-1 Kamikodanaka 4-chome, Nakahara-ku, Kawasaki-shi, Kanagawa-ken, 211-8588 Japan.

5.      On information and belief, Fujitsu Network Communications, Inc. ("FNC") is a corporation organized and existing under the laws of California and having a principal place of business at 2801 Telecom Parkway, Richardson, Texas 75082.  On information and belief, FNC is a wholly owned subsidiary of Fujitsu Limited that is doing business in the Northern District of

Illinois and elsewhere in the State of Illinois. For example, on information and belief, FNC markets, offers to sell, and sells in the United States, including within the Northern District of Illinois, optical amplifiers and telecommunications equipment designed by Fujitsu Limited. FNC is an appropriate party to Tellabs' counterclaims pursuant to Fed. R. Civ. P. 19 and/or 20.

### JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over these Counterclaims by Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc. pursuant to 28 U.S.C. §§ 1332(a)(1), (2), and (3) and/or 1367. These counterclaims arise out of the same transaction or occurrence, and/or involve a common nucleus of operative facts, that forms the basis for all or part of Fujitsu Limited's Complaint against Tellabs and/or one or more of Tellabs' defenses and/or counterclaims to Fujitsu Limited's Complaint. The amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     This Court has personal jurisdiction over Fujitsu Limited with respect to these Counterclaims by virtue of Fujitsu Limited's complaint against Tellabs. In addition, Fujitsu Limited has established minimum contacts with the forum such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

8.     FNC has admitted that it is subject to personal jurisdiction in this judicial district. (Defendant Fujitsu Network Communications, Inc.'s Answer and Affirmative Defenses to Plaintiff's Complaint and Defendant Fujitsu Network Communications, Inc.'s Counterclaims Against Plaintiff, case 1:08-cv-3379, Dkt. 59, at 4 (September 5, 2008) (Answer by FNC to Complaint Paragraph 7).) This Court has personal jurisdiction over FNC with respect to these Counterclaims because FNC has established minimum contacts with the forum such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

In particular, on information and belief, FNC markets, offers to sell, and sells optical amplifiers within the Northern District of Illinois and has committed tortious acts against Tellabs, as set forth below, that caused Tellabs to suffer injury within the State of Illinois.

9.      Venue is proper in this judicial district for these Counterclaims pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

### FIRST CLAIM OF TELLABS, INC., TELLABS OPERATIONS, INC., AND TELLABS NORTH AMERICA, INC. – BROUGHT AGAINST FUJITSU LIMITED AND FNC
(Misappropriation of Trade Secrets)

10.      Tellabs incorporates the allegations in paragraphs 1 through 9 of these counterclaims (Part III) as if fully set forth herein.

11.      On information and belief, Fujitsu Limited and FNC have misappropriated the trade secrets of Tellabs, and/or have induced, encouraged, assisted, aided, abetted, participated in, and/or materially supported the misappropriation of the trade secrets of Tellabs, including but not limited to software, manuals, and information regarding the design and operation of optical amplifiers designed and marketed as part of the Tellabs 7100 Optical Transport System, in order to improve the operation of optical amplifiers designed by Fujitsu Limited and marketed in the United States by FNC.  The following exemplary facts support Tellabs' claim for trade secret misappropriation against Fujitsu Limited and FNC:

12.      Tellabs takes a variety of measures to maintain the confidentiality of information concerning the design and operation of its optical amplifiers and to prevent such information from being disclosed to other companies that manufacture or sell optical amplifiers.  For example, Tellabs generally provides its software and manuals only to customers, subject to the terms of a "shrink-wrap," non-transferable license agreement ("License Agreement") (Exhibit C).  Section 3 of the License Agreement, labeled "Confidentiality," states that "the Licensed

Materials furnished by Tellabs hereunder are, and shall continue to be, proprietary property of and shall constitute trade secrets of Tellabs or its licensor(s)." Tellabs also includes a copyright statement at the beginning of each manual limiting the use and reproduction of the manual. Tellabs also maintains internal rules, policies, and guidelines and a corporate culture by which business and technical information is protected and not shared with unknown or unauthorized parties. For example, Paragraph 3(a) of Tellabs' Proprietary Information and Inventions Agreement, signed by new Tellabs hires, requires employees to agree that "[a]t all times, both during my employment by the Company and after its termination, I will not use or disclose, nor assist or authorize anyone else in using or disclosing, any Proprietary Information without the written consent of the Company, except as may be necessary in the ordinary course of performing my duties to the Company. I also agree to use my best efforts to otherwise safeguard all Proprietary Information so that it is not made available to unauthorized persons or entities."

13.    In order to prevent unauthorized companies from reverse engineering Tellabs' optical amplifiers, or otherwise inspecting or studying the internal design and structure of Tellabs' optical amplifiers, Tellabs generally will not sell its optical amplifiers to companies that manufacture or sell optical amplifiers, unless it is in furtherance of an established strategic commercial relationship between the parties.

14.    Fujitsu Limited designs optical amplifiers that are marketed and sold by FNC in the United States. In 2005, Tellabs competed against FNC in a proposal process to sell new optical telecommunications equipment, including optical amplifiers, to Verizon. FNC offered, in its proposal to Verizon in 2005, to sell telecommunications equipment, including optical amplifiers, designed by Fujitsu Limited. Ultimately, Tellabs prevailed over FNC, and Verizon selected Tellabs as its primary supplier of new telecommunications equipment, including optical

amplifiers. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

15.     After FNC lost the Verizon proposal to Tellabs, representatives of FNC and Fujitsu Limited spoke with Verizon and were told that the optical amplifiers designed by Fujitsu Limited and offered by FNC were inferior to the optical amplifiers designed and offered by Tellabs. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). Verizon described the technology used in the optical amplifiers designed by Fujitsu Limited and marketed by FNC as being "old" and "weak." *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

16.     Upon hearing Verizon's critical review of the optical amplifiers designed by Fujitsu Limited and marketed by FNC, Fujitsu Limited and FNC entered a state of "corporate panic." *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). Fujitsu Limited and FNC began a "post mortem" analysis to determine how to recover in the face of Tellabs' more advanced technology ("Post Mortem Analysis"). *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

17.     In Tellabs' proposal to Verizon, Tellabs offered to sell the Tellabs 7100 Optical Transport System.  As part of the proposal process, Tellabs prepared a presentation entitled "Tellabs 7100 Optical Transport Platform System and Applications Overview" (hereinafter "Tellabs 7100 Verizon Presentation") and presented it to employees of Verizon.  The Tellabs 7100 Verizon Presentation described features of the Tellabs 7100 Optical Transport System, including features of Tellabs' optical amplifiers, such as the ability of the amplifiers' gain control algorithm to automatically adjust for sudden changes in span loss and the ability to upgrade Tellabs' in-line amplifiers ("ILAs") to reconfigurable optical add-drop multiplexers ("ROADMs") while in service ("in-service upgrade").  Each page of the Tellabs 7100 Verizon

Presentation was marked with the following notification: "Not for use or disclosure outside the Verizon Companies except under written agreement."

18. ██████████████████████████████████████████████

████████████████████████████████

19. ██████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████

20.     When Fujitsu Limited and FNC began the Post Mortem Analysis, they knew "nothing at all" about the equipment that Tellabs offered to Verizon. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). ████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████

21. ██████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

22.

23.

24.

For example,

Paragraph 3(a) of Tellabs' Proprietary Information and Inventions Agreement, signed by new Tellabs hires, requires employees to agree that "[a]t all times, both during my employment by the Company and after its termination, I will not use or disclose, nor assist or authorize anyone else in using or disclosing, any Proprietary Information without the written consent of the Company, except as may be necessary in the ordinary course of performing my duties to the Company. I also agree to use my best efforts to otherwise safeguard all Proprietary Information so that it is not made available to unauthorized persons or entities."

25. ████████████████████████████████████████████

████ Fujitsu Limited and FNC became "consumed with the competitive business need to examine the Tellabs optical amplifier, whose technology Verizon had concluded was far superior to Fujitsu's," in order to modify and improve the optical amplifiers that were designed by Fujitsu Limited and marketed by FNC. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 388 (N.D. Ill. 2012). Fujitsu Limited specifically asked FNC to acquire Tellabs' optical amplifiers in order to research the features and operation of Tellabs' optical amplifiers. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

26. In August 2006, employees of Fujitsu Limited and/or FNC, including Ted van Ryn, head of FNC's competitive intelligence group, located and purchased a "Buy It Now" listing on eBay for approximately 1400 lbs. of salvaged Tellabs 7100 equipment along with supporting software and documentation. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377-378 (N.D. Ill. 2012). The salvaged Tellabs 7100 equipment was listed on eBay by a third party unrelated to and unaffiliated with Tellabs. The equipment listed on eBay by this third party included examples of the optical amplifiers used in a Tellabs 7100 Optical Transport System. The equipment and documentation listed on eBay by this third party also included

manuals for the Tellabs 7100 Optical Transport System ("Tellabs 7100 Manuals") and software for the Tellabs 7192 Integrated System Manager.

27.     FNC, acting under the authorization and/or direction of Fujitsu Limited, acquired the salvaged Tellabs 7100 equipment, the Tellabs 7100 Manuals, and the Tellabs 7192 Integrated System Manager software through the eBay listing while taking measures to hide its and Fujitsu Limited's identities from the seller. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

28.     The salvaged Tellabs equipment that Ted van Ryn obtained through the eBay listing included at least three optical amplifier modules. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). These three optical amplifier modules were sent to Japan and were inspected by engineers at Fujitsu Limited as part of the Post Mortem Analysis. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). The salvaged Tellabs 7100 equipment that Ted van Ryn obtained through eBay also came with supporting

documentation and software. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 378 (N.D. Ill. 2012). The supporting documentation included the Tellabs 7100 Manuals.

29.    When Fujitsu Limited and FNC produced manuals in response to discovery in case no. 1:08-cv-3379 and case no. 1:09-cv-4530 in this Court, and in case no.6:08-cv-22 in the United States District Court for the Eastern District of Texas, Fujitsu Limited and FNC produced those manuals subject to the protective orders in those litigations and with the label "Confidential – For Outside Counsel Only" stamped on each page.

30.    As a result of the eBay purchase, FNC received a binder containing the Tellabs 7100 Manuals and the Tellabs 7192 Integrated System Manager software, and that binder included a "shrink-wrap" license agreement ("License Agreement") (Exhibit C) restricting the use of the Tellabs 7100 Manuals and the Tellabs 7192 Integrated System Manager software. Section 2 of the license agreement provides that "the Licensed Materials are to be used…only for the intended use of the Licensed Materials as offered and furnished by Tellabs." Section 3 of the License Agreement, labeled "Confidentiality," states that "the Licensed Materials furnished by Tellabs hereunder are, and shall continue to be, proprietary property of and shall constitute trade secrets of Tellabs or its licensor(s)."

31.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

32.     On information and belief, the unauthorized copying, distribution, and use of Tellabs' trade secret information as part FNC's and Fujitsu Limited's Post Mortem Analysis facilitated the design and development of improved optical amplifiers by Fujitsu Limited which led to improved market success of optical telecommunications systems sold in the United States by FNC and in other regions by Fujitsu Limited. ██████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████     On information and belief, FNC became a second supplier to Verizon when it offered to sell the FLASHWAVE 9500 system to Verizon in response to a follow-on RFP in 2007.  On information and belief, FNC has sold the improved FLASHWAVE 7500 and FLASHWAVE 9500 systems to other customers in the United States.

33.     Fujitsu Limited's and FNC's acts of trade secret misappropriation have caused Tellabs to suffer actual losses and have unjustly enriched Fujitsu Limited and FNC; therefore, Tellabs is entitled to recover compensatory damages for the misappropriation in an amount subject to proof at trial.

34.     Fujitsu Limited's and FNC's use of the trade secrets misappropriated from Tellabs will continue to damage Tellabs' business and cause irreparable injury to Tellabs for which there is no adequate remedy at law unless Fujitsu Limited and FNC are enjoined by this

Court.

35.     On information and belief, the misappropriation of Tellabs' trade secrets by Fujitsu Limited and FNC was willful and malicious and entitles Tellabs to relief in the form of exemplary and punitive damages.

### SECOND CLAIM OF TELLABS, INC., TELLABS OPERATIONS, INC., AND TELLABS NORTH AMERICA, INC. – BROUGHT AGAINST FUJITSU LIMITED AND FNC
(Business Disparagement and Defamation)

36.     Tellabs incorporates the allegations in paragraphs 1 through 9 of these counterclaims (Part III) as if fully set forth herein.

37.     On information and belief, Fujitsu Limited and/or FNC have negligently, knowingly, and/or maliciously published, without privilege, various false, disparaging, and defamatory statements as facts to third parties, and those statements have harmed and/or impeached Tellabs' business reputation and economic interests.   Specific examples of the accused acts include, but are not limited to, the following:

38.     On information and belief, FNC has negligently, knowingly, recklessly, and maliciously made false statements regarding Tellabs to existing and/or potential customers.  For example, FNC made false statements ████████████████████████████████████████ ████████████████████   ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████ ████████████████████████ ████████████████████████████ ████████████████████

███████████████████████████████

39. On information and belief, Fujitsu Limited negligently, knowingly, recklessly, and maliciously induced, encouraged, assisted, aided, abetted, and/or participated in the making of false statements regarding Tellabs to existing and/or potential customers. ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████

40. On information and belief, FNC and Fujitsu Limited knew the statements made to ████████████████ were false because Tellabs beat FNC in a bid to supply WDM and ROADM telecommunications equipment to Verizon in 2005. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). After FNC lost the Verizon proposal to Tellabs, representatives of FNC and Fujitsu Limited spoke with Verizon and were told that the optical amplifiers designed by Fujitsu Limited and offered by FNC were inferior to the optical amplifiers designed and offered by Tellabs. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). Verizon described the technology used in the optical amplifiers designed by Fujitsu Limited and marketed by FNC as being "old" and "weak." Upon hearing Verizon's critical review of the optical amplifiers designed by Fujitsu Limited and marketed by FNC, Fujitsu Limited and FNC entered a state of "corporate panic." *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). Fujitsu Limited and FNC began a "post mortem" analysis to determine how to recover in the face of Tellabs' more advanced technology ("Post Mortem Analysis"). *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). Indeed, Fujitsu Limited and FNC became "consumed with the competitive business need to examine the Tellabs optical amplifier, whose technology

Verizon had concluded was far superior to Fujitsu's," in order to modify and improve the optical amplifiers that were designed by Fujitsu Limited and marketed by FNC. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 388 (N.D. Ill. 2012). Fujitsu Limited ultimately asked FNC to acquire Tellabs' optical amplifiers in order to research the features and operation of Tellabs' optical amplifiers. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

41.     On information and belief, Fujitsu Limited and FNC negligently, recklessly and/or maliciously disregarded the falsity of the statements made to ████████████████ in order to get ██████████████ to select FNC as a supplier over Tellabs. On information and belief, ██████████████ selected FNC as a supplier over Tellabs based on FNC's false statements.

42.     Fujitsu Limited's and FNC's acts are defamatory per se. Fujitsu Limited's and FNC's acts have injured and/or impeached Tellabs' business reputation and economic business interests; therefore, Tellabs is entitled to recover compensatory damages in an amount subject to proof at trial.

43.     Fujitsu Limited's and FNC's acts will continue to damage Tellabs' business reputation and economic business interests and cause irreparable injury to Tellabs for which there is no adequate remedy at law unless Fujitsu Limited and FNC are enjoined by this Court.

### THIRD CLAIM OF TELLABS, INC., TELLABS OPERATIONS, INC., AND TELLABS NORTH AMERICA, INC. – BROUGHT AGAINST FNC
(Unfair Competition)

44.     Tellabs incorporates the allegations in paragraphs 1 through 9 of these counterclaims (Part III) as if fully set forth herein.

45.     FNC has engaged in a long and continuous pattern of unfair competition against

Tellabs. Although only FNC competes with Tellabs in the United States, FNC has routinely enlisted and received the aid, assistance, help, participation, and support of its corporate parent, Fujitsu Limited, to support FNC's practice of unfair competition against Tellabs. The following exemplary facts support Tellabs' claim for unfair competition against FNC:

46. FNC markets, offers to sell, and sells telecommunications equipment, including optical amplifiers, in the United States that are designed and made by Fujitsu Limited in Japan. On information and belief, FNC has misappropriated the proprietary information, confidential business information, and trade secrets of Tellabs, including but not limited to software, manuals, and information regarding the design and operation of optical amplifiers designed and marketed as part of the Tellabs 7100 Optical Transport System, in order to help Fujitsu Limited improve the optical amplifiers that FNC markets and sells. Fujitsu Limited has induced, encouraged, assisted, aided, abetted, participated in, and/or materially supported the misappropriation of Tellabs' trade secrets, proprietary information, and confidential business information.

47. Fujitsu Limited designs optical amplifiers that are marketed and sold by FNC in the United States. In 2005, Tellabs competed against FNC in a proposal process to sell new optical telecommunications equipment, including optical amplifiers, to Verizon. FNC offered, in its proposal to Verizon in 2005, to sell telecommunications equipment, including optical amplifiers, designed by Fujitsu Limited. Ultimately, Tellabs prevailed over FNC, and Verizon selected Tellabs as its primary supplier of new telecommunications equipment, including optical amplifiers. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

48. After FNC lost the Verizon proposal to Tellabs Operations, representatives of FNC and Fujitsu Limited spoke with Verizon and were told that the optical amplifiers designed

by Fujitsu Limited and offered by FNC were inferior to the optical amplifiers designed and offered by Tellabs. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). Verizon described the technology used in the optical amplifiers designed by Fujitsu Limited and marketed by FNC as being "old" and "weak." *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

49.     Upon hearing Verizon's critical review of the optical amplifiers designed by Fujitsu Limited and marketed by FNC, Fujitsu Limited and FNC entered a state of "corporate panic." *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). Fujitsu Limited and FNC began a "post mortem" analysis to determine how to recover in the face of Tellabs' more advanced technology ("Post Mortem Analysis"). *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

50.     In Tellabs' proposal to Verizon, Tellabs offered to sell the Tellabs 7100 Optical Transport System. As part of the proposal process, Tellabs prepared a presentation entitled "Tellabs 7100 Optical Transport Platform System and Applications Overview" (hereinafter "Tellabs 7100 Verizon Presentation") and presented it to employees of Verizon. The Tellabs 7100 Verizon Presentation described features of the Tellabs 7100 Optical Transport System, including features of Tellabs' optical amplifiers, such as the ability of the amplifiers' gain control algorithm to automatically adjust for sudden changes in span loss and the ability to upgrade Tellabs' in-line amplifiers ("ILAs") to reconfigurable optical add-drop multiplexers ("ROADMs") while in service ("in-service upgrade"). Each page of the Tellabs 7100 Verizon Presentation was marked with the following notification: "Not for use or disclosure outside the Verizon Companies except under written agreement."

51.     ███████████████████████████████████████████████

███████████████████████████████████

52.     █████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████

53.     When Fujitsu Limited and FNC began the Post Mortem Analysis, they knew "nothing at all" about the equipment that Tellabs offered to Verizon. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012). ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

54.     █████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

55. 

56.

57.

For example, Paragraph 3(a) of Tellabs' Proprietary Information and Inventions Agreement, signed by new Tellabs hires, requires employees to agree that "[a]t all times, both during my employment by the Company and after its termination, I will not use or disclose, nor assist or authorize anyone else

in using or disclosing, any Proprietary Information without the written consent of the Company, except as may be necessary in the ordinary course of performing my duties to the Company. I also agree to use my best efforts to otherwise safeguard all Proprietary Information so that it is not made available to unauthorized persons or entities."

58. ██████████████████████████████████████

████ Fujitsu Limited and FNC became "consumed with the competitive business need to examine the Tellabs optical amplifier, whose technology Verizon had concluded was far superior to Fujitsu's," in order to modify and improve the optical amplifiers that were designed by Fujitsu Limited and marketed by FNC. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 388 (N.D. Ill. 2012). Fujitsu Limited specifically asked FNC to acquire Tellabs' optical amplifiers in order to research the features and operation of Tellabs' optical amplifiers. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

59. In August 2006, employees of Fujitsu Limited and/or FNC, including Ted van Ryn, head of FNC's competitive intelligence group, located and purchased a "Buy It Now" listing on eBay for approximately 1400 lbs. of salvaged Tellabs 7100 equipment along with supporting software and documentation. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377-378 (N.D. Ill. 2012). The salvaged Tellabs 7100 equipment was listed on eBay by a third party unrelated to and unaffiliated with Tellabs. The equipment listed on eBay by this third party included examples of the optical amplifiers used in a Tellabs 7100 Optical Transport System. The equipment and documentation listed on eBay by this third party also included manuals for the Tellabs 7100 Optical Transport System ("Tellabs 7100 Manuals") and software for the Tellabs 7192 Integrated System Manager.

60. FNC, acting under the authorization and/or direction of Fujitsu Limited, acquired

the salvaged Tellabs 7100 equipment, the Tellabs 7100 Manuals, and the Tellabs 7192 Integrated

System Manager software through the eBay listing while taking measures to hide its and Fujitsu

Limited's identities from the seller. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374,

377 (N.D. Ill. 2012).

61.     The salvaged Tellabs 7100 equipment that Ted van Ryn obtained through the

eBay listing included at least three optical amplifier modules. *Tellabs Operations, Inc. v. Fujitsu

Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).  FNC sent these three optical amplifier modules to

Japan to be inspected by engineers at Fujitsu Limited as part of the Post Mortem Analysis.

*Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).  The salvaged

Tellabs 7100 equipment that Ted van Ryn obtained through eBay also came with supporting

documentation and software.  *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 378

(N.D. Ill. 2012).  The supporting documentation included the Tellabs 7100 Manuals.

62.     When Fujitsu Limited and FNC produced manuals in response to discovery in

case no. 1:08-cv-3379 and case no. 1:09-cv-4530 in this Court, and in case no.6:08-cv-22 in the

United States District Court for the Eastern District of Texas, Fujitsu Limited and FNC produced

those manuals subject to the protective orders in those litigations and with the label "Confidential

– For Outside Counsel Only" stamped on each page.

63.     As a result of the eBay purchase, FNC received a binder containing the Tellabs

7100 Manuals and the Tellabs 7192 Integrated System Manager software, and that binder

included a "shrink-wrap" license agreement ("License Agreement") (Exhibit C) restricting the

use of the Tellabs 7100 Manuals and the Tellabs 7192 Integrated System Manager software.

Section 2 of the license agreement provides that "the Licensed Materials are to be used…only for

the intended use of the Licensed Materials as offered and furnished by Tellabs." Section 3 of the

License Agreement, labeled "Confidentiality," states that "the Licensed Materials furnished by

Tellabs hereunder are, and shall continue to be, proprietary property of and shall constitute trade

secrets of Tellabs or its licensor(s)."

64.     ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

65.     On information and belief, the unauthorized copying, distribution, and use of Tellabs' trade secret information as part FNC's and Fujitsu Limited's Post Mortem Analysis facilitated the design and development of improved optical amplifiers by Fujitsu Limited which led to improved market success of optical telecommunications systems sold in the United States by FNC. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ On information and belief, FNC became a second supplier to Verizon when it offered to sell the FLASHWAVE 9500 system to Verizon in response to a follow-on RFP in 2007.  On information and belief, FNC has sold the improved FLASHWAVE 7500 and FLASHWAVE 9500 systems to other customers in the United States.

66.     ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ Fujitsu Limited and FNC acted improperly during the litigation to prevent Tellabs from discovering the results of the Post Mortem Analysis and to hide and prevent the discovery of evidence that products designed by Fujitsu Limited and marketed by FNC infringed Tellabs' patents.  For example, in support of Fujitsu Limited's and FNC's Motion for Protective Order Relieving it from Responding to Discovery Relating to Inspection of Tellabs Equipment (Case 1:09-cv-4530, Dkt. 330), FNC's general counsel, Ms. Wright, submitted a declaration that was found to be "inaccurate,

insufficient, and misleading" by Magistrate Judge Cole. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 382 (N.D. Ill. 2012). Mr. Hitoshi Fuji, an employee of Fujitsu Limited, also submitted a declaration that Magistrate Judge Cole found to be "inaccurate." *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 382 (N.D. Ill. 2012). When Fujitsu Limited and FNC were ordered by this Court to produce all documents relating to the Post Mortem Analysis, *see generally* Mem. Op. and Order, Case 1:09-cv-4530, Dkt. 912 (Aug. 29, 2012); Minute Order, Case 1:09-cv-4530, Dkt. 952 (Sept. 27, 2012), Fujitsu Limited and FNC improperly redacted those documents, *see* Minute Order, Case 1:09-cv-4530, Dkt. 977 (October 19, 2012), in order to hide evidence that products designed by Fujitsu Limited and marketed by FNC "related to" and, therefore, possibly infringed Tellabs' patents ████████████████████ ████████

67.     On information and belief, Fujitsu Limited and/or FNC have negligently, knowingly, and/or maliciously published, without privilege, various false, disparaging, and defamatory statements as facts to third parties.

68.     For example, on information and belief, FNC has negligently, knowingly, recklessly, and maliciously made false statements regarding Tellabs to existing and/or potential customers. For example, FNC made false statements ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████ ████████████████████ ████████████████████

███████████████████████

████████████████

69.     On information and belief, Fujitsu Limited negligently, knowingly, recklessly, and maliciously induced, encouraged, assisted, aided, abetted, and/or participated in the making of false statements regarding Tellabs to existing and/or potential customers.  For example, on information and belief, Fujitsu Limited induced, encouraged, assisted, aided, abetted, and/or participated in the making of false statements regarding Tellabs to ████████████████

███

70.     On information and belief, FNC and Fujitsu Limited knew the statements made to ███████████████████ were false because Tellabs beat FNC in a bid to supply WDM and ROADM telecommunications equipment to Verizon in 2005.  *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).  After FNC lost the Verizon proposal to Tellabs, representatives of FNC and Fujitsu Limited spoke with Verizon and were told that the optical amplifiers designed by Fujitsu Limited and offered by FNC were inferior to the optical amplifiers designed and offered by Tellabs.  *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).  Verizon described the technology used in the optical amplifiers designed by Fujitsu Limited and marketed by FNC as being "old" and "weak."  Upon hearing Verizon's critical review of the optical amplifiers designed by Fujitsu Limited and marketed by FNC, Fujitsu Limited and FNC entered a state of "corporate panic."  *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).  Fujitsu Limited and FNC began a "post mortem" analysis to determine how to recover in the face of Tellabs' more advanced technology ("Post Mortem Analysis").  *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).  Indeed, Fujitsu Limited and FNC became "consumed with

the competitive business need to examine the Tellabs optical amplifier, whose technology Verizon had concluded was far superior to Fujitsu's," in order to modify and improve the optical amplifiers that were designed by Fujitsu Limited and marketed by FNC. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 388 (N.D. Ill. 2012). Fujitsu Limited ultimately asked FNC to acquire Tellabs' optical amplifiers in order to research the features and operation of Tellabs' optical amplifiers. *Tellabs Operations, Inc. v. Fujitsu Limited*, 283 F.R.D. 374, 377 (N.D. Ill. 2012).

71. In addition to the false statements about Tellabs referenced, above, FNC knowingly published false statements as facts to ████████████████████ regarding the capabilities and features of its products, including, but not limited to, claims that FNC's product offering to ████████████████████████████████████████

72. On information and belief, Fujitsu Limited negligently, knowingly, recklessly, and maliciously induced, encouraged, assisted, aided, abetted, and/or participated in the making

of false statements regarding the capabilities and features of FNC's products to existing and/or potential customers. For example, on information and belief, Fujitsu Limited induced, encouraged, assisted, aided, abetted, and/or participated in the making of false statements regarding Tellabs to ████████████████████████.

73.     On information and belief, Fujitsu Limited and FNC knowingly, negligently, recklessly and/or maliciously disregarded the falsity of the statements made to ██████████ ████████ in order to get ████████████████ to select FNC as a supplier over Tellabs. On information and belief, ████████████████ selected FNC as a supplier over Tellabs based on FNC's false statements. As a result of FNC's deceptive practices, Tellabs was forced to make price and feature concessions in order to ultimately win ████████████████████████ business.

74.     FNC's pattern and practice of unfair competition has caused Tellabs to suffer actual losses and has unjustly enriched FNC; therefore, Tellabs is entitled to recover compensatory damages for the misappropriation in an amount subject to proof at trial.

75.     FNC's pattern and practice of unfair competition will continue to damage Tellabs' business and cause irreparable injury to Tellabs for which there is no adequate remedy at law unless FNC is enjoined by this Court.

76.     On information and belief, FNC's pattern and practice of unfair competition was willful and malicious and entitles Tellabs to relief in the form of exemplary and punitive damages.

### FOURTH CLAIM OF TELLABS, INC., TELLABS OPERATIONS, INC., AND TELLABS NORTH AMERICA, INC. – BROUGHT AGAINST FUJITSU LIMITED
(Inducing, Aiding, and Abetting Unfair Competition by FNC)

77.     Tellabs incorporates the allegations in paragraphs 1 through 9 of these

counterclaims (Part III) as if fully set forth herein.

78.     Tellabs incorporates the allegations set forth in the Third Claim of Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc. – Brought Against FNC (paragraphs 44-76 of these counterclaims (Part III)) regarding the claim of unfair competition against FNC as if fully set forth herein.

79.     Fujitsu Limited has induced, encouraged, assisted, aided, abetted, participated in, and/or materially supported FNC's acts, pattern, and practice of unfair competition against Tellabs.

80.     Fujitsu Limited's acts to induce, encourage, assist, aided, abet, participate in, and/or materially support FNC's pattern and practice of unfair competition has caused Tellabs to suffer actual losses and has unjustly enriched Fujitsu Limited; therefore, Tellabs is entitled to recover compensatory damages for the misappropriation in an amount subject to proof at trial.

81.     Fujitsu Limited's acts to induce, encourage, assist, aided, abet, participate in, and/or materially support FNC's pattern and practice of unfair competition will continue to damage Tellabs' business and cause irreparable injury to Tellabs for which there is no adequate remedy at law unless Fujitsu Limited is enjoined by this Court.

82.     Fujitsu Limited's acts to induce, encourage, assist, aided, abet, participate in, and/or materially support FNC's pattern and practice of unfair competition were committed willfully and maliciously and entitle Tellabs to relief in the form of exemplary and punitive damages.

### FIFTH CLAIM OF TELLABS, INC., TELLABS OPERATIONS, INC., AND TELLABS NORTH AMERICA, INC. – BROUGHT AGAINST FUJITSU LIMITED AND FNC
(Tortious Interference with Contract and Prospective Business Relations)

83.     Tellabs incorporates the allegations in paragraphs 1 through 9 of these

counterclaims (Part III) as if fully set forth herein.

84.     Tellabs incorporates the allegations set forth in the First Claim of Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc. – Brought Against Fujitsu Limited and FNC (paragraphs 10-35 of these counterclaims (Part III)), regarding Tellabs' claim against Fujitsu Limited and FNC for trade secret misappropriation, as if fully set forth herein.

85.     Tellabs incorporates the allegations set forth in the Second Claim of Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc. – Brought Against Fujitsu Limited and FNC (paragraphs 36-43 of these counterclaims (Part III)), regarding Tellabs' claim against Fujitsu Limited and FNC for business disparagement and defamation, as if fully set forth herein.

86.     Tellabs incorporates the allegations set forth in the Third Claim of Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc. – Brought Against FNC (paragraphs 44-76 of these counterclaims (Part III)), regarding Tellabs' claim against FNC for unfair competition, as if fully set forth herein.

87.     Tellabs incorporates the allegations set forth in the Fourth Claim of Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc. – Brought Against Fujitsu Limited (paragraphs 77-82 of these counterclaims (Part III)), regarding Tellabs' claim against Fujitsu Limited for inducing, aiding, and abetting unfair competition committed by FNC, as if fully set forth herein.

88.     On information and belief, Fujitsu Limited and FNC have intentionally interfered with Tellabs' prospective business relationships by committing tortious acts that have prevented Tellabs from entering into a business relationship with various third parties.

89.     On information and belief, there was a reasonable probability that Tellabs would have entered into various business relationships, and Fujitsu Limited's and FNC's tortious acts

were the cause of Tellabs' failure to do so.

90.     On information and belief, Fujitsu Limited and FNC have also intentionally interfered with Tellabs' existing business relationships for which Tellabs had an existing valid contract by committing tortious acts.

91.     Fujitsu Limited's and FNC's acts of tortious interference with contract and prospective business relations have caused Tellabs to suffer actual losses and have unjustly enriched Fujitsu Limited and FNC; therefore, Tellabs is entitled to recover compensatory damages for the tortious interference in an amount subject to proof at trial.

92.     Fujitsu Limited's and FNC's acts of tortious interference will continue to damage Tellabs' business and cause irreparable injury to Tellabs for which there is no adequate remedy at law unless Fujitsu and FNC are enjoined by this Court.

93.     Fujitsu Limited's and FNC's acts of tortious interference were committed willfully and maliciously and entitle Tellabs to relief in the form of exemplary and punitive damages.

**PART IV:  COUNTERCLAIMS BY TELLABS, INC., TELLABS OPERATIONS INC., AND TELLABS NORTH AMERICA, INC. AGAINST PLAINTIFF FUJITSU LIMITED**

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendants Tellabs, Inc., Tellabs Operations Inc., and Tellabs North America, Inc. (collectively, "Tellabs") set forth the following Counterclaims  and supporting allegations against Fujitsu Limited:

**PARTIES**

1.      Tellabs, Inc. is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at One Tellabs Center, 1415 West Diehl Road, Naperville, Illinois 60563.

2.      Tellabs Operations, Inc. is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at One Tellabs Center, 1415 West Diehl Road, Naperville, Illinois 60563.

3.      Tellabs North America, Inc. is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at One Tellabs Center, 1415 West Diehl Road, Naperville, Illinois 60563.

4.      Fujitsu Limited alleges that it is a corporation organized and existing under the laws of Japan and having a principal place of business at 1-1 Kamikodanaka 4-chome, Nakahara-ku, Kawasaki-shi, Kanagawa-ken, 211-8588 Japan.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over these Counterclaims by Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc. pursuant to 28 U.S.C. §§ 1331, 1338, and/or 2201.

6.      Venue is proper in this judicial district for these Counterclaims pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and/or 1400.

**TELLABS, INC.'S, TELLABS OPERATIONS INC.'S, AND TELLABS NORTH AMERICA, INC.'S FIRST COUNTERCLAIM FOR DECLARATORY JUDGMENT AGAINST FUJITSU LIMITED**
(Invalidity of the '681 Patent)

7.     Tellabs incorporates the allegations in paragraphs 1 through 6 of these counterclaims (Part IV) as if fully set forth herein.

8.     Fujitsu Limited has asserted that U.S. Patent 7,227,681 ("the '681 Patent") was duly and legally issued by the USPTO on June 5, 2007.  Fujitsu Limited claims to own all rights, title, and interest in and to the '681 Patent.

9.     Tellabs asserts that the '681 Patent is invalid for failing to comply with one or more requirements of the patent laws of the United States, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

10.     There is therefore an actual controversy between Tellabs and Fujitsu Limited as to the invalidity of the '681 Patent.

**TELLABS, INC.'S, TELLABS OPERATIONS INC.'S, AND TELLABS NORTH AMERICA, INC.'S SECOND COUNTERCLAIM FOR DECLARATORY JUDGMENT AGAINST FUJITSU LIMITED**
(Non-Infringement of the '681 Patent)

11.     Tellabs incorporates the allegations in paragraphs 1 through 10 of these counterclaims (Part IV) as if fully set forth herein.

12.     Fujitsu Limited has asserted that it is the owner of the '681 Patent and has the right to enforce the '681 Patent.

13.     Fujitsu Limited has asserted that Tellabs Operations, Inc., Tellabs, Inc., and Tellabs North America, Inc. are infringing one or more of the claims of the '681 Patent.

14.     Tellabs denies that it infringes or has infringed any valid and/or enforceable claim of the '681 Patent, directly, contributorily, or by inducement, either literally or under the doctrine of equivalents, willfully or otherwise.

15.     There is therefore an actual controversy between Tellabs and Fujitsu Limited as to the non-infringement of the '681 Patent.

**TELLABS, INC.'S, TELLABS OPERATIONS INC.'S, AND TELLABS NORTH AMERICA, INC.'S THIRD COUNTERCLAIM FOR DECLARATORY JUDGMENT AGAINST FUJITSU LIMITED**
(Invalidity of the '737 Patent)

16.     Tellabs incorporates the allegations in paragraphs 1 through 15 of these counterclaims (Part IV) as if fully set forth herein.

17.     Fujitsu Limited has asserted that U.S. Patent  ("the '737 Patent") was duly and legally issued by the USPTO on May 28, 1996.  Fujitsu Limited claims to own all rights, title, and interest in and to the '737 Patent.

18.     Tellabs asserts that the '737 Patent is invalid for failing to comply with one or more requirements of the patent laws of the United States, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

19.     There is therefore an actual controversy between Tellabs and Fujitsu Limited as to the invalidity of the '737 Patent.

**TELLABS, INC.'S, TELLABS OPERATIONS INC.'S, AND TELLABS NORTH AMERICA, INC.'S FOURTH COUNTERCLAIM FOR DECLARATORY JUDGMENT AGAINST FUJITSU LIMITED**
(Non-Infringement of the '737 Patent)

20.     Tellabs incorporates the allegations in paragraphs 1 through 19 of these counterclaims (Part IV) as if fully set forth herein.

21.     Fujitsu Limited has asserted that it is the owner of the '737 Patent and has the right to enforce the '737 Patent.

22.     Fujitsu Limited has asserted that Tellabs Operations, Inc., Tellabs, Inc., and Tellabs North America, Inc. are infringing one or more of the claims of the '737 Patent.

23.     Tellabs denies that it infringes or has infringed any valid and/or enforceable claim

of the '737 Patent, directly, contributorily, or by inducement, either literally or under the doctrine of equivalents, willfully or otherwise.

24.     There is therefore an actual controversy between Tellabs and Fujitsu Limited as to the non-infringement of the '737 Patent.

**TELLABS, INC.'S, TELLABS OPERATIONS INC.'S, AND TELLABS NORTH AMERICA, INC.'S FIFTH COUNTERCLAIM FOR DECLARATORY JUDGMENT AGAINST FUJITSU LIMITED**
(Invalidity of the '163 Patent)

25.     Tellabs incorporates the allegations in paragraphs 1 through 24 of these counterclaims (Part IV) as if fully set forth herein.

26.     Fujitsu Limited has asserted that U.S. Patent  ("the '163 Patent") was duly and legally issued by the USPTO on June 11, 1996.  Fujitsu Limited claims to own all rights, title, and interest in and to the '163 Patent.

27.     Tellabs asserts that the '163 Patent is invalid for failing to comply with one or more requirements of the patent laws of the United States, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

28.     There is therefore an actual controversy between Tellabs and Fujitsu Limited as to the invalidity of the '163 Patent.

**TELLABS, INC.'S, TELLABS OPERATIONS INC.'S, AND TELLABS NORTH AMERICA, INC.'S SIXTH COUNTERCLAIM FOR DECLARATORY JUDGMENT AGAINST FUJITSU LIMITED**
(Non-Infringement of the '163 Patent)

29.     Tellabs incorporates the allegations in paragraphs 1 through 28 of these counterclaims (Part IV) as if fully set forth herein.

30.     Fujitsu Limited has asserted that it is the owner of the '163 Patent and has the right to enforce the '163 Patent.

31.     Fujitsu Limited has asserted that Tellabs Operations, Inc., Tellabs, Inc., and

Tellabs North America, Inc. are infringing one or more of the claims of the '163 Patent.

32.     Tellabs denies that it infringes or has infringed any valid and/or enforceable claim of the '737 Patent, directly, contributorily, or by inducement, either literally or under the doctrine of equivalents, willfully or otherwise.

33.     There is therefore an actual controversy between Tellabs and Fujitsu Limited as to the non-infringement of the '163 Patent.

**PRAYER FOR RELIEF**

Tellabs prays for a Judgment as follows:

(a)     dismissal with prejudice of Plaintiff's Complaint against Tellabs;

(b)     judgment and declaration that the claims of the '681 Patent are invalid and/or that Tellabs has not infringed and does not infringe, either literally or under the doctrine of equivalents, and has neither contributed to nor induced the infringement of, any valid claim of the '681 Patent, willfully or otherwise;

(c)     judgment and declaration that the claims of the '163 Patent are invalid and/or that Tellabs has not infringed and does not infringe, either literally or under the doctrine of equivalents, and has neither contributed to nor induced the infringement of, any valid claim of the '163 Patent, willfully or otherwise;

(d)     judgment and declaration that the claims of the '737 Patent are invalid and/or that Tellabs has not infringed and does not infringe, either literally or under the doctrine of equivalents, and has neither contributed to nor induced the infringement of, any valid claim of the '737 Patent, willfully or otherwise;

(e)     judgment that Plaintiff's claims are barred by equitable estoppels and/or unclean hands;

(f)     judgment that Plaintiff's claims are barred by laches;

(g)     judgment that Plaintiff's claims are limited and/or barred in whole or in part by the provisions of 35 U.S.C. § 287;

(h)     judgment that Plaintiff's claims are limited by the provisions of 35 U.S.C. § 286;

(i)     a denial of Plaintiffs' request for damages and injunctive relief;

(j)     judgment that Fujitsu Limited has directly infringed the '480 Patent, either literally or

under the doctrine of equivalents;

(k)     judgment that Fujitsu Limited has contributed to the infringement of the '480 Patent, either literally or under the doctrine of equivalents;

(l)     judgment that Fujitsu Limited has induced infringement of the '480 Patent, either literally or under the doctrine of equivalents;

(m)     an award of compensatory damages for Fujitsu Limited's direct and indirect infringement of the '480 Patent in an amount to be determined at trial and an award of interest as allowed by law;

(n)     judgment that Fujitsu Limited's direct and indirect infringement of the '480 Patent, either literally or under the doctrine of equivalents, has been willful and that Tellabs Operations is entitled to treble damages;

(o)     judgment that FNC has directly infringed the '480 Patent, either literally or under the doctrine of equivalents;

(p)     judgment that FNC has contributed to the infringement of the '480 Patent, either literally or under the doctrine of equivalents;

(q)     judgment that FNC has induced infringement of the '480 Patent, either literally or under the doctrine of equivalents;

(r)     an award of compensatory damages for FNC's direct and indirect infringement of the '480 Patent in an amount to be determined at trial and an award of interest as allowed by law;

(s)     judgment that FNC's direct and indirect infringement of the '480 Patent, either literally or under the doctrine of equivalents, has been willful and that Tellabs Operations is entitled to treble damages;

(t)     issue a permanent injunction preventing Fujitsu Limited and FNC, and those in active concert with them, from further infringement, contributory infringement, or inducement of infringement of the '480 Patent;

(u)     judgment that Fujitsu Limited has directly infringed the '063 Patent, either literally or under the doctrine of equivalents;

(v)     judgment that Fujitsu Limited has contributed to the infringement of the '063 Patent, either literally or under the doctrine of equivalents;

(w)     judgment that Fujitsu Limited has induced infringement of the '063 Patent, either literally or under the doctrine of equivalents;

(x)     an award of compensatory damages for Fujitsu Limited's direct and indirect infringement of the '063 Patent in an amount to be determined at trial and an award of interest as allowed by law;

(y)     judgment that Fujitsu Limited's direct and indirect infringement of the '063 Patent, either literally or under the doctrine of equivalents, has been willful and that Tellabs Operations is entitled to treble damages;

(z)     judgment that FNC has directly infringed the '063 Patent, either literally or under the doctrine of equivalents;

(aa)    judgment that FNC has contributed to the infringement of the '063 Patent, either literally or under the doctrine of equivalents;

(bb)    judgment that FNC has induced infringement of the '063 Patent, either literally or under the doctrine of equivalents;

(cc)    an award of compensatory damages for FNC's direct and indirect infringement of the '063 Patent in an amount to be determined at trial and an award of interest as allowed

by law;

(dd)    judgment that FNC's direct and indirect infringement of the '063 Patent, either literally or under the doctrine of equivalents, has been willful and that Tellabs Operations is entitled to treble damages;

(ee)    issue a permanent injunction preventing Fujitsu Limited and FNC, and those in active concert with them, from further infringement, contributory infringement, or induced infringement of the '063 Patent;

(ff)    judgment that Tellabs is the prevailing party in this action and that this case is an "exceptional case" within the meaning of 35 U.S.C. § 285 and an award of costs and reasonable attorneys' fees to Tellabs to the extent permitted by law;

(gg)    judgment that Fujitsu Limited and FNC have misappropriated the trade secrets of Tellabs;

(hh)    an award of actual and compensatory damages for Fujitsu Limited's and FNC's misappropriation in an amount to be determined at trial;

(ii)    judgment that the misappropriation by Fujitsu Limited and FNC was willful and malicious and that Tellabs is entitled to relief in the form of exemplary and punitive damages;

(jj)    judgment that Fujitsu Limited and FNC have committed defamation and business disparagement of Tellabs;

(kk)    an award of actual and compensatory damages for Fujitsu Limited's and FNC's defamation and business disparagement in an amount to be determined at trial;

(ll)    judgment that the defamation and business disparagement by Fujitsu Limited and FNC was willful and malicious and that Tellabs is entitled to relief in the form of

exemplary and punitive damages;

(mm)   judgment that FNC has committed unfair competition against Tellabs;

(nn)   an award of actual and compensatory damages for FNC's unfair competition in an amount to be determined at trial;

(oo)   judgment that the unfair competition by FNC was willful and malicious and that Tellabs is entitled to relief in the form of exemplary and punitive damages;

(pp)   judgment that Fujitsu Limited induced, encouraged, assisted, aided, abetted, participated in, and/or materially supported FNC's commission of unfair competition against Tellabs;

(qq)   an award of actual and compensatory damages for Fujitsu Limited's inducement, encouragement, assistance, aid, abetment, participation in, and/or material support of FNC's commission of unfair competition against Tellabs in an amount to be determined at trial;

(rr)   judgment that Fujitsu Limited's inducement, encouragement, assistance, aid, abetment, participation in, and/or material support of FNC's commission of unfair competition against Tellabs was willful and malicious and that Tellabs is entitled to relief in the form of exemplary and punitive damages;

(ss)   judgment that Fujitsu Limited and FNC tortiously interfered with the contracts and prospective business relations of Tellabs;

(tt)   an award of actual and compensatory damages for Fujitsu Limited's and FNC's tortious interference with the contracts and prospective business relations of Tellabs in an amount to be determined at trial;

(uu)   judgment that Fujitsu Limited's and FNC's tortious interference with the contracts

and prospective business relations of Tellabs was willful and malicious and that Tellabs is entitled to relief in the form of exemplary and punitive damages;

(vv) judgment that Tellabs Operations, Inc., Tellabs Inc., and Tellabs North America, Inc., be awarded their actual damages suffered as a result of the acts and omissions of Fujitsu Limited and FNC as described herein and that Fujitsu Limited and FNC be adjudged jointly and severally liable therefor; and

(ww) the grant to Tellabs of any further equitable or legal relief as the Court deems just and proper.

Dated:  May 1, 2013

/s/ James P. Bradley

Richard O'Malley, Jr.
Robert D. Leighton
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois  60603
Telephone:  312.853.7000
Facsimile:  312.853.7036

James P. Bradley (*admitted pro hac vice*)
Texas Bar No. 02826000
Steve Malin (*admitted pro hac vice*)
Texas Bar No. 12859750
Kelley A. Conaty (*admitted pro hac vice*)
Texas Bar No. 24040716
Mark A. Dodd (*admitted pro hac vice*)
Texas Bar No. 24040815
Kristoffer B. Leftwich (*admitted pro hac vice*)
Texas Bar No. 24046285
Benjamin B. Kelly (*admitted pro hac vice*)
Texas Bar No. 24055765
**SIDLEY AUSTIN LLP**
717 North Harwood
Suite 3400
Dallas, Texas 75201
Telephone:  214.981.3300
Facsimile:  214.981.3400

**ATTORNEYS FOR
TELLABS OPERATIONS, INC. , TELLABS INC.,
AND TELLABS NORTH AMERICA, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system:

_/s/ James P. Bradley_

**CERTIFICATE OF PERMISSION TO FILE UNDER SEAL**

I hereby certify that this document and certain exhibits referenced in this document are permitted to be filed under seal pursuant to Local Rule 26.2 and paragraphs 21 and 22 of the Stipulated Third Amended Protective Order entered in Case No. 1:12-cv-03229 (Dkt. 23) on March 12, 2013.

_/s/ James P. Bradley_
James P. Bradley