IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FUJITSU LIMITED, | ) |
| | ) |
| Plaintiff/Counterdefendant, | ) |
| | ) |
| v. | ) |
| | ) |
| TELLABS OPERATIONS, INC., | ) |
| TELLABS, INC., and TELLABS NORTH | ) |
| AMERICA, INC., | ) |
| | ) |
| Defendants/Counterclaimants. | ) |
| | ) No. 12 C 3229 |
| | ) |
| TELLABS OPERATIONS, INC., | ) |
| TELLABS, INC., and TELLABS NORTH | ) |
| AMERICA, INC., | ) |
| | ) |
| Third-Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| FUJITSU NETWORK COMMUNICATIONS, INC., | ) |
| | ) |
| Third-Party Defendant. | ) |

MEMORANDUM OPINION AND ORDER DENYING FUJITSU LIMITED'S AND FNC'S
MOTION TO DISMISS TELLABS' COUNTERCLAIM AND THIRD-PARTY CLAIM
FOR MISAPPROPRIATION OF TRADE SECRETS

JAMES F. HOLDERMAN, District Judge:

On May 1, 2013, Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc. (collectively "Tellabs") filed several counterclaims against Fujitsu Limited ("Fujitsu Limited") in which Tellabs incorporates what it calls "joined claims" against Fujitsu Network Communications, Inc. ("FNC"). (*See* Dkt. No. 48 (redacted) and Dkt. No. 54 (sealed).) The court construes Tellabs' claims against FNC under proper pleading as third-party claims pursuant to Federal Rule of Civil Procedure 14. Among other counterclaims and third-party claims,

1

Tellabs alleges that both Fujitsu Limited and FNC (collectively "Fujitsu") are liable for misappropriation of trade secrets. (*Id.* at 35-44, Part III ¶¶ 10-35 ("First Claim").) Specifically, Tellabs alleges that Fujitsu misappropriated (1) the "Tellabs 7100 Verizon Presentation," (2) "Tellabs 7100 Manuals," and (3) "software for the Tellabs 7192 Integrated System Manager." (*Id.* ¶¶ 17, 26.) Fujitsu has moved to dismiss Tellabs' trade secret misappropriation claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 74 (sealed) and Dkt. No. 77 (redacted) ("Fujitsu's Mot.").) For the reasons set forth below, Fujitsu's motion to dismiss is denied.

## BACKGROUND

At this stage of the litigation, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of Tellabs. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013). The facts below are set forth in accordance with this standard.

Tellabs and Fujitsu are competitors in the optical telecommunications industry, specifically in the area of optical amplifiers. (First Claim ¶ 14.) In 2005, Tellabs and FNC competed against each other in a "proposal process to sell new optical telecommunications equipment, including optical amplifiers, to Verizon." (*Id.*) Tellabs ultimately won the contract with Verizon, and Fujitsu "began a 'post mortem' analysis to determine how to recover in the face of Tellabs' more advanced technology." (*Id.* ¶¶ 14-16.)

As part of the Verizon proposal process, Tellabs prepared a presentation titled "Tellabs 7100 Optical Transport Platform System and Applications Overview" ("Tellabs 7100 Verizon Presentation"), which Tellabs presented to employees of Verizon. (*Id.* ¶ 17.) The Tellabs 7100 Verizon Presentation described specific features of the Tellabs 7100 Optical Transport System,

including features of Tellabs' optical amplifiers. (*Id.*)[1] "Each page of the Tellabs 7100 Verizon Presentation was marked with the following notification: 'Not for use or disclosure outside the Verizon Companies except under written agreement.'" (*Id.*) An FNC employee named under seal in Tellabs' counterclaim and third-party claim (hereinafter "Employee #1") "obtained an unauthorized copy" of the Tellabs 7100 Verizon Presentation and distributed an unauthorized copy of the Tellabs 7100 Verizon Presentation to another FNC employee, also named under seal (hereinafter "Employee #2"), in November 2005. (*Id.* ¶ 21.) Employee #2, in turn, distributed unauthorized copies to four additional FNC employees. (*Id.*) An unauthorized copy of the Tellabs 7100 Verizon Presentation was also distributed to a Fujitsu Limited employee in November 2005. (*Id.*) Employee #1 and Employee #2 then copied portions of the Tellabs 7100 Verizon Presentation into their own derivative presentation, which was "distributed and/or displayed to employees within FNC and Fujitsu Limited that were involved in the Post Mortem Analysis." (*Id.* ¶ 22.)

In August 2006, FNC employee Ted van Ryn located and purchased from a vendor on eBay "approximately 1400 lbs. of salvaged Tellabs 7100 equipment," including at least three optical amplifier modules used in a Tellabs 7100 Optical Transport System and a binder containing manuals for the Tellabs 7100 Optical Transport System ("Tellabs 7100 Manuals"), software for the "Tellabs 7192 Integrated System Manager," and a "shrink-wrap" license agreement ("License Agreement"). (*Id.* ¶¶ 26, 28, 30.) The eBay vendor was not related to or affiliated with Tellabs, and FNC employees took specific measures to hide the identities of FNC and Fujitsu Limited from the seller, "acting under the authorization and/or direction of Fujitsu

---

[1] These specific features included "the ability of the amplifiers' gain control algorithm to automatically adjust for sudden changes in span loss and the ability to upgrade Tellabs' in-line amplifiers ('ILAs') to reconfigurable optical add-drop multiplexers ('ROADMs') while in service ('in-service upgrade')." (First Claim ¶ 17.)

3

Limited." (*Id.* ¶¶ 26-27.) The three optical amplifier modules purchased through eBay were then "sent to Japan and were inspected by engineers at Fujitsu Limited as part of the Post Mortem Analysis." (*Id.* ¶ 28.) Fujitsu employees also distributed unauthorized copies of the Tellabs 7100 Manuals to engineers at Fujitsu Limited "who were involved in inspecting Tellabs' optical amplifiers as part of the Post Mortem Analysis," and "copied, without Tellabs' authorization, portions of the Tellabs 7100 Manuals into derivative works analyzing the features of the Tellabs 7100 system." (*Id.* ¶ 31.)

The License Agreement, attached as Exhibit C to Tellabs' Answer and Counterclaims,[2] includes in its definition of "Licensed Materials" the Tellabs 7192 Integrated System Manager software and "accompanying user documentation." (License Agreement § 1.)[3] The License Agreement further states that "the Licensed Materials furnished by Tellabs hereunder are, and shall continue to be, proprietary property of and shall constitute trade secrets of Tellabs or its licensor(s)," and that all "Licensed Materials are to be used . . . only for the intended use of the Licensed Materials as offered and furnished by Tellabs." (First Claim ¶ 30.)

Fujitsu used Tellabs' trade secret information to design and develop improved optical amplifiers, "which led to improved market success of optical telecommunications systems sold in the United States by FNC and in other regions by Fujitsu Limited." (*Id.* ¶ 32.) Tellabs alleges "actual losses" and Fujitsu's unjust enrichment due to FNC's improved sales, and seeks compensatory and punitive damages, as well as injunctive relief. (*Id.* ¶¶ 32-35.)

---

[2] Documents attached to a complaint are considered part of the pleading. Fed. R. Civ. P. 10(c); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

[3] Although the License Agreement states that the purpose of the License Agreement is "to use the Licensed Materials for the purpose of managing a network of *Tellabs ®7000 series* network elements owned by Licensee," (License Agreement §§ 1, 2 (emphasis added)), the parties appear to agree that the "accompanying user documentation" protected by the License Agreement includes the Tellabs 7100 Manuals. (*See* Tellabs' Resp. at 11.)

## LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires all pleadings to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, a pleading must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Pleadings do not need "detailed factual allegations," but must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In making this determination, the court looks beyond "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678. As long as the pleading "give[s] effective notice to the opposing party" and "provide[s] sufficient detail 'to present a story that holds together,'" however, it will generally survive a motion to dismiss. *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010)). On the other hand, a plaintiff can plead itself out of court by pleading "facts that show [it] has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *accord D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (quoting *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995)).

CHOICE OF LAW

At the outset, the court addresses a potentially relevant choice-of-law issue raised by the parties. According to Fujitsu, Texas law applies to Tellabs' misappropriation of trade secrets claim, because Texas is the state where the majority of the alleged acts of misappropriation took place and because Texas is where FNC, which is headquartered in Richardson, Texas, received the benefit of the alleged misappropriation. (*See* Dkt. No. 75 (sealed) and Dkt. No. 78 (redacted) ("Fujitsu's Mem.") at 4-6.) According to Tellabs, Illinois law should apply because "the injury to Tellabs—the actual losses suffered by Tellabs through Fujitsu's acts of trade secret misappropriation—were sustained in Naperville, Illinois." (Dkt. No. 86 (sealed) and 87 (redacted) ("Tellabs' Resp.") at 5.)

The parties have not identified a specific conflict of laws relevant to the pending motion to dismiss, which usually would result in the court applying Illinois substantive law as the law of the forum state. *See Kochert v. Adagen Medical Int'l., Inc.*, 491 F.3d 674, 677 (7th Cir. 2007) ("Where the parties have not identified a conflict in state law, we will generally apply the law of the forum state."). Because a misappropriation of trade secrets claim is a common law tort in Texas and a statutory claim based on the Uniform Trade Secrets Act in Illinois, however, the court will make a preliminary choice-of-law determination for purposes of assisting the parties in understanding the scope and nature of Tellabs' pending counterclaim.

This court's jurisdiction over Tellabs' counterclaim and third-party claim for misappropriation of trade secrets is based on the court's supplemental jurisdiction under 28 U.S.C. § 1367. "[R]easoning by analogy from diversity cases," the Seventh Circuit has held that district courts should apply the choice-of-law rules of the forum state in which they sit "to determine what law governs pendent state claims." *Baltimore Orioles, Inc. v. Major League*

*Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir. 1986). Illinois's choice-of-law rules therefore determine the substantive law governing Tellabs' counterclaim and third-party claim for misappropriation of trade secrets.

As the Seventh Circuit has noted, while "[t]he rules on choice of law in tort cases usually select the law of the place where the victim of the tort was injured . . . the *Illinois* choice of law rule applicable to misappropriation cases . . . selects the place where the misappropriation took place or the defendant obtained the benefit of the misappropriation, the latter being the state or other jurisdiction in which the defendant has its principal place of business." *Salton, Inc. v. Philips Domestic Appliances & Personal Care B.V.*, 391 F.3d 871, 878-79 (7th Cir. 2004) (emphasis in original) (citing *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.*, 383 N.E.2d 1379, 1389 (Ill. App. Ct., 1st Dist. 1978)); *see also* Restatement (Second) of Conflict of Laws § 145 cmt. f (1971) ("the place of injury does not play so important a role for choice-of-law purposes in the case of false advertising and the misappropriation of trade values as in the case of other kinds of torts"). As alleged in Tellabs' counterclaim and third-party claim, some alleged tortious acts occurred in Illinois, especially the attempted misappropriation of trade secret information by the entity allegedly hired by FNC to surreptitiously obtain competitive intelligence by contacting Tellabs' employees in Illinois under false pretenses. (First Claim ¶¶ 23-24.) Nevertheless, the state where it appears the majority of the acts of misappropriation took place and the state where Fujitsu obtained the benefit of the alleged misappropriation is Texas.

Tellabs argues that "the parties may discover more information" about the location where the alleged misappropriation took place during the discovery phase of the litigation, and that it is therefore "premature at this stage" for the court to make a choice-of-law determination.

(Tellabs' Resp. at 6.) The court acknowledges Tellabs' practical concern. Because the parties have not identified any substantive difference between Texas common law and Illinois statutory law relevant to the pending motion to dismiss, however, the court finds that Tellabs will not be prejudiced if the court applies Texas law on a preliminary basis in the analysis that follows. In the event discovery produces new information relevant to the choice-of-law analysis, the parties are explicitly granted leave to revisit this preliminary choice-of-law determination if they desire to do so at a later point in this litigation.

ANALYSIS

Under Texas common law, to establish claim for trade secret misappropriation "a plaintiff must show '(a) the existence of a trade secret; (b) a breach of a confidential relationship or improper discovery of the trade secret; (c) use of the trade secret; and (d) damages.'" *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579 (5th Cir. 2013) (quoting *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991)). Fujitsu does not challenge the sufficiency of Tellabs' counterclaim and third-party claim with respect to three of these four elements, and the court therefore accepts that Tellabs has adequately pleaded that the Tellabs 7100 Verizon Presentation, the Tellabs 7100 Manuals, and the Tellabs 7192 Integrated System Manager software are trade secrets of Tellabs, that were used by Fujitsu, resulting in damages to Tellabs.[4] Because there is no allegation that Tellabs and Fujitsu were parties to a "confidential relationship" breached by Fujitsu, the analysis that follows is limited to the question of whether Tellabs has adequately pleaded that Fujitsu engaged in "improper means" of acquiring Tellabs' trade secrets.

---

[4] Because Fujitsu has not challenged Tellabs' efforts to maintain the secrecy of its alleged trade secrets, the court need not recite or analyze the redacted allegations set forth in paragraphs 23-25 of Tellabs' counterclaim and third-party claim. (*See* Tellabs' Resp. at 11-12 (citing these paragraphs as evidence of Tellabs' "diligent efforts to maintain the secrecy of its competitive information").)

"Improper means of acquiring another's trade secrets include theft, fraud, unauthorized interception of communications, inducement of or knowing participation in a breach of confidence, and other means either wrongful in themselves or wrongful under the circumstances of the case." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 876 (5th Cir. 2013) (quoting *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 636 (Tex. App. 2007)). Although "[a] complete catalogue of improper means is not possible," the concept of "improper means" broadly includes "means which fall below the generally accepted standards of commercial morality and reasonable conduct." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 785 (5th Cir. 1999) (quoting *E.I. duPont deNemours & Co. v. Christopher*, 431 F.2d 1012, 1016 (5th Cir. 1970)). Such means include "fraudulent misrepresentations to induce disclosure" and other forms of "espionage." Restatement of Torts § 757 cmt. f (1939); *see also Phillips v. Frey*, 20 F.3d 623, 630 (5th Cir. 1994). On the other hand, "trade secret law does not offer protection against discovery by fair and honest means such as independent invention, accidental disclosure, or 'reverse engineering.'" *Phillips*, 20 F.3d at 629. Ultimately, it is unlawful for a defendant to appropriate its competitor's trade secrets "through deviousness," if "countervailing defenses are not reasonably available." *E.I. duPont deNemours & Co.*, 431 F.2d at 1017.

1. <u>Tellabs 7100 Verizon Presentation</u>

Tellabs alleges in its Answer and Counterclaims that Employee #1 "obtained an unauthorized copy of the Tellabs 7100 Verizon Presentation in 2005," despite the fact that each page of the presentation stated that it was "[n]ot for use or disclosure outside the Verizon Companies except under written agreement," and despite the obligation of Tellabs' employees not to "use or disclose, nor assist or authorize anyone else in using or disclosing, any Proprietary Information without the written consent of the Company, except as may be necessary in the

ordinary course of performing [the employee's] duties to the Company." (First Claim ¶¶ 12, 17, 21.) Tellabs does not allege in its counterclaim exactly *how* Employee #1 obtained an unauthorized copy of the Tellabs 7100 Verizon Presentation.

Fujitsu argues that Tellabs has "couch[ed] its claim as a bare legal conclusion that the Verizon Presentation was 'unauthorized.'" (Fujitsu's Mem. at 9.) The court disagrees. At this stage of the litigation, Tellabs is permitted to rely on reasonable inferences based on the alleged facts. Drawing all reasonable inferences in favor of Tellabs, the court agrees with Tellabs that one reasonable inference from the facts alleged in Tellabs' counterclaim and third-party claim is that "Fujitsu obtained this presentation through improper means." (Tellabs' Resp. at 14.) Even under the more stringent pleading requirements of Rule 9(b), if "the facts constituting the fraud are not accessible to the plaintiff," a plaintiff need only provide "the grounds for his suspicions." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013). As pleaded, Tellabs' counterclaim and third-party claim for misappropriation of the Tellabs 7100 Verizon Presentation states a plausible right to relief and is sufficiently detailed to put Fujitsu on notice of "what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). No more is required at this stage of the litigation.

2.      Tellabs 7100 Manuals and Tellabs 7192 Integrated System Manager Software[5]

Tellabs further alleges in its Answer and Counterclaims that FNC employee Ted van Ryn located and purchased from an eBay vendor certain Tellabs 7100 equipment, which included a binder containing the Tellabs 7100 Manuals and the Tellabs 7192 Integrated System Manager

---

[5] In its response brief, Tellabs inexplicably refers to "Tellabs 7192 source code" as one of its alleged trade secrets. (Tellabs' Resp. at 8, 10, 15.) Tellabs does not use the term "source code" anywhere in its alleged counterclaim. Moreover, the License Agreement explicitly notes that "the Tellabs 7192 Integrated System Manager software" is distinguishable from Tellabs' "source code." (License Agreement § 1.) The court therefore analyzes this trade secret only as referring to the Tellabs 7192 Integrated System Manager software.

software. (First Claim ¶¶ 26, 30.) The binder also contained a "shrink-wrap" License Agreement stating that the Licensed Materials—e.g., the Tellabs 7192 Integrated System Manager software and "accompanying user documentation"—were to be used "only for the intended use of the Licensed Materials as offered and furnished by Tellabs." (*Id.* ¶ 30; *see also* License Agreement § 1 (defining "Licensed Materials").) Specifically, the intended use of the Licensed Materials was "for the purpose of managing a network of Tellabs ®7000 series network elements owned by Licensee." (License Agreement § 2.) The License Agreement explicitly prohibited the Licensee from "reverse engineering, reverse compiling, disassembling, modifying, adapting, or translating the Software or otherwise obtaining source code from the object code version of the Software." (*Id.*)

> The License Agreement also stated at the top of the first page:
>
> YOU AGREE THAT BY OPENING THE PACKAGE, YOU HAVE AGREED TO COMPLY WITH THESE LICENSE TERMS. (If you do not wish to enter into this Agreement, return the Software with the seal intact to Tellabs for a refund or credit.)

(License Agreement at 1.) Tellabs' counterclaim and third-party claim acknowledges that "[t]he salvaged Tellabs 7100 equipment was listed on eBay by a third party unrelated to and unaffiliated with Tellabs." (First Claim ¶ 26.)

Fujitsu argues that Tellabs has failed to plausibly allege Fujitsu acquired the Tellabs 7100 Manuals or the Tellabs 7192 Integrated System Manager software using improper means, because "the information FNC obtained was lawfully purchased from a public seller with no alleged affiliation to Tellabs." (Fujitsu's Mem. at 7.) In support of this argument, Fujitsu notes that Tellabs has not alleged that "the eBay seller obtained the Tellabs equipment and related documentation through any improper means, or that the listing of the equipment and related documentation for sale was improper." (*Id.* at 8.)

11

Under Texas law, "improper means" need not themselves be unlawful. *E.I. duPont deNemours & Co.*, 431 F.2d at 1016 ("means may be improper . . . even though they do not cause any other harm than that to the interest in the trade secret") (quoting Restatement of Torts § 757, cmt. f (1939)). For example, in *Astoria Industries of Iowa, Inc. v. SNF, Inc.*, the court held that "reasonable and fair-minded people [could] reach different conclusions regarding whether Astoria misappropriated [Brand FX's] design drawings" when Astoria successfully asked Brand FX's customer for a copy of the confidential drawings. *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 636-37 (Tex. App. 2007)). Similarly, in *Alcatel USA, Inc. v. DGI Technologies, Inc.*, the court found "ample evidence to support the jury's determination that DGI obtained DSC's trade secrets through improper means," where DGI mislead or "duped" an employee of a third party into disclosing DSC's operating system software. *Alcatel*, 166 F.3d at 785 ("a reasonable jury could have found that such means 'fall below the generally accepted standards of commercial morality and reasonable conduct'") (quoting *E.I. duPont deNemours & Co.*, 431 F.2d at 1016).

Tellabs has alleged that FNC employees took specific measures to hide FNC's and Fujitsu Limited's identifies from the eBay seller by using FNC employees' personal accounts and credit cards, and by falsely representing that FNC employees were acting on behalf of an entity that was not FNC of Fujitsu Limited. (First Claim ¶ 27.) Fujitsu was also on notice that Tellabs restricted its licensing of the Tellabs 7100 Manuals and the Tellabs 7192 Integrated System Manager software to be used solely "for the purpose of managing a network of Tellabs ®7000 series network elements owned by Licensee." (License Agreement § 2.) Viewing these allegations in the light most favorable to Tellabs, as the court must do at this stage of the litigation, the court finds that Tellabs has sufficiently pleaded that Fujitsu obtained the Tellabs

7100 Manuals and the Tellabs 7192 Integrated System Manager software through means that were not "fair and honest." *Phillips*, 20 F.3d at 629; *see also E.I. duPont deNemours & Co.*, 431 F.2d at 1017 ("thou shall not appropriate a trade secret through deviousness under circumstances in which countervailing defenses are not reasonably available."). Whether Fujitsu's actions actually "fall below the generally accepted standards of commercial morality and reasonable conduct" and whether there were "countervailing defenses . . . reasonably available" to Tellabs are questions better addressed at the close of discovery, when the factual record has been more fully-developed regarding the specifics of the eBay transaction. *E.I. duPont deNemours & Co.*, 431 F.2d at 1016-17. At this point in the litigation, the court finds that Tellabs has stated a plausible claim for relief against both Fujitsu Limited and FNC. Each must now separately file an answer to Tellabs' claims.

## CONCLUSION

For the reasons set forth above, Fujitsu Limited's and FNC's "Motion to Dismiss Tellabs' Trade Secret Misappropriation Counterclaim Pursuant to Fed. R. Civ. P. 12(b)(6)" [74] [77] is denied. Fujitsu Limited's answer to Tellabs' counterclaim and FNC's third-party answer to Tellabs' joined counterclaim, which is to be treated by Tellabs and FNC as a Rule 14 third-party complaint, are each to be filed on or before 10/22/13. Parties are again encouraged to discuss settlement.

ENTER:

JAMES F. HOLDERMAN
United States District Court Judge

Date: October 10, 2013